ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
BRIAN E. KLEIN (Cal. State Bar No.: 258486)
MONICA D. MANGE (Cal. State Bar No.: 234950)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6920/6529
    Facsimile: (213) 894-6269
    E-mail: brian.klein@usdoj.gov
            monica.mange@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 10-1055-PA |
| Plaintiff, | |
| v. | GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION *IN LIMINE* TO EXCLUDE EVIDENCE RELATED TO THE RULES, STANDARDS AND PRACTICES OF THE FEDERATION OF EXCHANGE ACCOMMODATORS; EXHIBITS |
| EZRI NAMVAR, aka Ezri Namvar Moghadam, and HAMID TABATABAI, aka Hamid Taba, | |
| Defendants. | Hearing Date: March 28, 2011<br>Hearing Time: 3:00 p.m. |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby respectfully files this opposition to defendants Ezri Namvar and Hamid Tabatabai's joint motion *in limine* to exclude evidence relating to the Federation of Exchange Accommodators, Docket Number 62.

  The government's opposition is based upon the attached memorandum of points and authorities and exhibits, the files and records of this case, and such additional evidence and argument as may be received at the hearing on this motion.

DATED: March 7, 2011    Respectfully submitted,

             ANDRÉ BIROTTE JR.
             United States Attorney

             ROBERT E. DUGDALE
             Assistant United States Attorney
             Chief, Criminal Division


             _____/s/_____
             BRIAN E. KLEIN
             MONICA D. MANGE
             Assistant United States Attorneys

             Attorneys for Plaintiff
             United States of America

TABLE OF CONTENTS

|   | PAGE |
|---|---|
| I. INTRODUCTION | 1 |
| II. STATEMENT OF FACTS | 2 |
| III. ARGUMENT | 4 |
|     A. The Government's Proposed FEA Evidence is Inextricably Intertwined with the Other Evidence of the Charged Scheme to Defraud | 5 |
|     B. Alternatively, the Government's Proposed FEA Evidence is Relevant to Defendant Namvar's Knowledge and State of Mind | 7 |
| IV. CONCLUSION | 11 |

# TABLE OF AUTHORITIES

**FEDERAL CASES:**                                                      PAGE:

United States v. Blitz,
151 F.3d 1002 (9th Cir. 1998) . . . . . . . . . . . . . . . 8

United States v. Curtin,
489 F.3d 935 (9th Cir. 2007) . . . . . . . . . . . . . . . . 8

United States v. Daly,
974 F.2d 1215 (9th Cir. 1992) . . . . . . . . . . . . . . . 5

United States v. DeGeorge,
380 F.3d 1203 (9th Cir. 2004) . . . . . . . . . . . . . . . 5

United States v. Johnson,
820 F.2d 1065 (9th Cir. 1987) . . . . . . . . . . . . . . . 11

United States v. Lew,
875 F.2d 219 (9th Cir. 1989) . . . . . . . . . . . . . . . . 10

United States v. Parker,
549 F.2d 1217 (9th Cir. 1977) . . . . . . . . . . . . . . . 11

United States v. Ramirez-Jiminez,
967 F.2d 1321 (9th Cir. 1992) . . . . . . . . . . . . . . . 5

United States v. Rrapi,
175 F.3d 742 (9th Cir. 1999) . . . . . . . . . . . . . . . . 5

United States v. Soliman,
813 F.2d 277 (9th Cir. 1987) . . . . . . . . . . . . . . . . 5

United States v. Treadwell,
593 F.3d 990 (9th Cir. 2010) . . . . . . . . . . . . . . . . 7

United States v. Vizcarra-Martinez,
66 F.3d 1006 (9th Cir. 1995) . . . . . . . . . . . . . . . . 5

United States v. Vo,
413 F.3d 1010 (9th Cir. 2005) . . . . . . . . . . . . . . . 8

United States v. Yazzie,
59 F.3d 807 (9th Cir. 1995) . . . . . . . . . . . . . . . . 11

**STATUTES:**

Fed. R. Evid. 403 . . . . . . . . . . . . . . . . . . . . . PASSIM

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . PASSIM

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Defendants Ezri Namvar and Hamid Tabatabai (collectively, "defendants") have jointly moved to exclude the government from introducing evidence at trial relating to the internal rules, standards, and practices of the Federation of Exchange Accommodators (the "FEA"). (Defendants' Joint Motion In Limine ("Def. JMIL"), Dkt. No. 62.) Defendants are charged with participating in a scheme to defraud, in which five former clients (the "Five Victim Clients") of Namco Financial Exchange Corp. ("NFE") separately provided funds to NFE, between April and September 2008, based on material misrepresentations defendants made (or caused to be made) to and material facts they concealed (or caused to be concealed) from the Five Victim Clients.

Defendants argue that evidence relating to the FEA is irrelevant to the criminal charges they face, five counts of wire fraud, and that even if relevant, the risk of unfair prejudice and jury confusion outweigh its probative value under Federal Rule of Evidence ("Rule") 403. (Def. JMIL at 6-10.) Defendants are wrong. The FEA evidence that the government intends to introduce at trial (which is much narrower and more focused than what defendants seeks to exclude) is relevant because it is inextricably intertwined with this case, providing necessary background information which completes the story of defendants' charged criminal activity. It is also extremely relevant to defendant Namvar's knowledge and state of mind in connection with the charged offenses. Finally, it is not unfairly prejudicial nor will it lead to jury confusion, and its probative value is

not outweighed -- much less substantially outweighed -- by any danger of unfair prejudice.

## II. STATEMENT OF FACTS

Defendant Namvar controlled and operated NFE, and defendant Tabatabai was NFE's controller and defendant Namvar's right-hand man. As discussed at length in the government's motion in limine to preclude the introduction of two impermissible defenses (Dkt. No. 63), NFE was a 1031 exchange qualified intermediary.

The FEA is the only recognized national trade organization formed to represent 1031 exchange qualified intermediaries and it takes an active role in responding to federal and state regulation and legislation that concerns 1031 exchanges. (FEA website, http://www.1031.org.) One of the reasons the FEA was organized was to establish and promote ethical standards of conduct for qualified intermediaries. (Id.) As part of the membership application process, prospective and renewing members agree to certain conditions and pay a fee. (Id.) 1031 exchange qualified intermediaries, like NFE, are not required to join the FEA to do business.

Defendant Namvar, on behalf of NFE, voluntarily joined the FEA and was a member from 2006 through 2008.[1] NFE included the fact of its membership on its marketing materials -- see brochure cover page (specifically, bottom left hand corner), which is attached as Exhibit 1.

In renewing NFE's membership for 2008, defendant Namvar explicitly agreed to abide by the following terms, among other

---

[1] From 2003 through 2005, Namco Financial, Inc. ("NFI") was a member of the FEA. NFE is the successor to NFI.

2

things, on behalf of NFE, by initialing next to them and signing at the bottom of the page:[2]

> The Member Company agrees to abide by the following requirements as specified for licensees in the FEA Model State Act regarding investment of exchange funds:
>
> Accounting for Monies and Property: Every licensee under this chapter shall have the responsibility to act as a custodian for all exchange funds, being money, property, other consideration or instruments received by the licensee from, or on behalf of the client, except funds received as the licensee's compensation. Every licensee shall invest exchange funds in investments which meet a "Prudent Person Standard" and satisfy investment goals of liquidity and preservation of principal. For purposes of this section, a "Prudent Person Standard" shall be violated if:
>
> a.  Exchange funds are knowingly commingled by the Exchange Facilitator with the operating accounts of the Exchange Facilitator; or
>
> b.  Exchange Funds are loaned or otherwise transferred to any person or entity affiliated with or related to the Exchange Facilitator except that this subsection (b) shall not apply to the transfer or loan made to a Financial Institution which is the parent of or related to the Exchange Facilitator; or
>
> c.  Exchange funds are invested in a manner that does not provide sufficient liquidity to meet the Exchange Facilitator's contractual obligations to its clients and does not preserve the principal of the exchange funds.

(Exhibit 2.)  Despite defendant Namvar's commitment to abide by those terms, each of them, (a)-(c), were violated in connection with the Five Victim Clients' 1031 exchange proceeds, with defendant Namvar, as well as defendant Tabatabai, playing key

---

[2] The signature line on the bottom of the page was mistakenly hand dated "1-3-2007." The real date was some time in 2008, presumably "1-3-2008," because FEA membership applications before then did not have the above terms. The 2008 FEA membership renewal letter, dated December 10, 2007, explained that the above membership terms were added as a result of a number of qualified intermediary bankruptcies in 2007. (Exhibit 3 at 1.)

roles in those violations. Exchange funds were improperly commingled and a substantial portion of them were transferred to another one defendant Namvar's companies, Namco Capital Group, Inc. ("NCG"), which was experiencing severe financial distress at the time, and from there, for example, the funds were used to pay off creditors of NCG. In addition, the Five Victim Clients' exchange funds were not invested to "provide sufficient liquidity," because NFE failed to meet its obligations to each of them. Of the approximately $27 million the Five Victim Clients collectively entrusted to NFE for safekeeping, only approximately $4 million was returned to or used on behalf of the Five Victim Clients pursuant to their exchange agreements with NFE.

### III. ARGUMENT

**The Government's Proposed FEA Evidence is Relevant and Admissible**

Defendants seek to exclude all evidence of the FEA's rules, standards, and practices. (Def. JMIL at 3.) The FEA evidence that the government intends to offer at trial, however, is a much narrower and more focused subset of possible FEA evidence and is highly relevant to the criminal charges in this case. The government's proposed FEA evidence relates to the fact that NFE (formerly NFI) was a member of the FEA and defendant Namvar, on behalf of NFE, agreed to abide by certain terms when he renewed NFE's membership for 2008 (which other evidence will show were violated in connection with the Five Victim Clients' 1031 exchanges). (See Exhibit 2.) That evidence is relevant because it gives a full picture of NFE at the time of the charged criminal conduct, and it is relevant to defendant Namvar's knowledge and state of mind in connection with the charges.

A. <u>The Government's Proposed FEA Evidence is Inextricably Intertwined with the Other Evidence of the Charged Scheme to Defraud</u>

The government's proposed FEA evidence is inextricably intertwined with the charged scheme to defraud. Acts or transactions not charged in the indictment are admissible as substantive evidence -- and not subject to analysis under Rule 404(b) -- if such evidence is "inextricably intertwined" with evidence of the charged offense. <u>United States v. Soliman</u>, 813 F.2d 277, 279 (9th Cir. 1987). Evidence is "inextricably intertwined" with a charged offense, where (1) the evidence "constitutes a part of the transaction that serves as the basis for the criminal charge," or (2) "it [is] necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." <u>United States v. DeGeorge</u>, 380 F.3d 1203, 1220 (9th Cir. 2004) (quoting <u>United States v. Vizcarra-Martinez</u>, 66 F.3d 1006, 1012 (9th Cir. 1995)); see also <u>United States v. Ramirez-Jiminez</u>, 967 F.2d 1321, 1327 (9th Cir. 1992) (explaining inextricably intertwined evidence as "'direct evidence,' used to flesh out the circumstances surrounding the crime with which the defendant has been charged, thereby allowing the jury to make sense of the testimony in its proper context"); <u>United States v. Daly</u>, 974 F.2d 1215, 1217 (9th Cir. 1992) (finding evidence of a shoot-out inextricably intertwined with evidence of the felon in possession charge: "[the jury] cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." (internal quotations omitted)); <u>United States v. Rrapi</u>, 175 F.3d 742, 748-

50 (9th Cir. 1999) (evidence of prior bad acts may be admitted "for the purpose of providing the context in which the charged crime occurred"; proper to admit evidence of uncharged successful and unsuccessful burglaries).

Admission of the government's intended FEA evidence properly permits the government to present a "coherent and comprehensible story" regarding the charged scheme to defraud for several reasons.  First, since NFE is the vehicle through which defendants defrauded the Five Victim Clients, it is important for the jury to have a robust understanding of NFE during the time period in question.  NFE's membership in the FEA helps fill out the picture of NFE as a purportedly legitimate 1031 exchange qualified intermediary.  This is not an ancillary point.  The FEA membership was noted in NFE's marketing materials.  (See Exhibit 1.)  It was important to NFE.  With good reason, the FEA was, and is, the only recognized national trade organization for 1031 exchange qualified intermediaries and thus NFE, through defendant Namvar, voluntarily chose to become a fee-paying member and receive the FEA's imprimatur of legitimacy.

Second, evidence that NFE was a member of the FEA and defendant Namvar explicitly agreed to abide by certain of its membership terms in 2008, on behalf of NFE (Exhibit 2), fleshes out the circumstances surrounding the charged crimes because it shows defendant Namvar had prior notice that the way in which NFE and NCG intended to handle the Five Victim Clients' exchange funds (i.e., misuse and dissipate them) was improper and that NFE should have provided the Five Victim Clients with accurate and full disclosure of what was really going to happen to their

exchange funds before they entrusted their money to NFE for safekeeping, so they could evaluate the true risks of their transactions with NFE. See <u>United States v. Treadwell</u>, 593 F.3d 990, 996 (9th Cir. 2010) (fraud victims should have had the "opportunity to weigh the true benefits and risks of the transaction..."). It also shows that defendant Namvar did not blindly or ignorantly operate NFE. Rather, through NFE's membership in the FEA, he was aware of 1031 exchange industry standards and practices for running an above-board, transparent, and viable qualified intermediary, one that would not leave clients empty handed or short-changed, as happened here with the Five Victim Clients.

    B. **Alternatively, the Government's Proposed FEA Evidence is Relevant to Defendant Namvar's Knowledge and State of Mind**

To the extent the Court does not agree that the government's proposed FEA evidence is admissible as inextricably intertwined evidence, the government believes that it is admissible under Rule 404(b) to show defendant Namvar's knowledge and intent in committing the charged offenses, as well as absence of mistake or accident. These issues are particularly salient here because the government anticipates that defendant Namvar will argue at trial that he lacked any intent to defraud the Five Victim Clients, which is an element of the wire fraud charges that the government needs to prove to the jury.

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts," while not admissible to prove bad character or propensity, may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge,

identity, or absence of mistake or accident." Fed. R. Evid. 404(b). Case law recognizes that Rule 404(b) is a rule of inclusion, and the district court has wide discretion to decide whether to admit such evidence. <u>United States v. Blitz</u>, 151 F.3d 1002, 1007 (9th Cir. 1998). However, "[o]nce it has been established that the evidence offered serves one of these Rule 404(b)] purposes . . . the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403." <u>United States v. Curtin</u>, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). Evidence is admissible under Rule 404(b) if:

> (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged.

<u>United States v. Vo</u>, 413 F.3d 1010, 1018 (9th Cir. 2005) (internal citations and quotations omitted).

All of the factors for admissibility pursuant to Rule 404(b) are satisfied here. First, the government's intended FEA evidence establishes defendant Namvar's knowledge and intent, as well as lack of mistake or accident. The FEA evidence shows defendant Namvar was on notice of how NFE, as a 1031 purportedly legitimate exchange qualified intermediary, should have handled the Five Victim Clients' exchange funds and thus the types of full and accurate disclosures that should have been made to the Five Victim Clients before they entrusted their money to NFE. Further, the government expects the evidence at trial will show that the Five Victim Clients' understanding of how their exchanges should have worked is consistent with the terms of the 2008 FEA membership that defendants violated through their scheme

8

to defraud (e.g., the verification letters defendant Tabatabai caused to be sent to certain of the Five Victim Clients stating that all of their funds were available upon demand (when in fact the evidence will show that was not the case)).

Moreover, as noted above, the government is required to prove intent to defraud. Despite defendants' contention (Def. JMIL at 7-8), the evidence of relevant wrongfulness is evidence of the requisite intent because, as noted above, defendant Namvar was on notice of how a legitimate 1031 exchange qualified intermediary was supposed to operate.[3] Further, the government's intended FEA evidence directly contradicts defendant Namvar's potential assertion at trial that he was not experienced or knowledgeable about how a 1031 exchange should operate and thus did not have the requisite intent to defraud the Five Victim Clients.

The other Rule 404(b) factors are also met. The government's proposed FEA evidence is not too remote in time – after all, its focus is on the 2008 membership renewal, which is the year of the charged crimes. And the evidence that defendants, through NFE, violated certain FEA 2008 membership terms is more than sufficient. In the government's case-in-chief, a summary witness will explain what happened to the Five Victim Clients' money after it was wired to NFE, which will establish, among other things, that it was improperly co-mingled, transferred, and used (i.e., not invested to "provide sufficient

---

[3] Defendants contend that a limiting instruction is incapable of guiding a jury on how to treat FEA evidence (Def. JMIL at 9, fn. 4); however, this argument lacks merit. A jury instruction can be crafted that clearly and properly informs the jury that violating the FEA's membership terms is not a crime.

liquidity"), with the Five Victim Clients receiving none or only a portion of their exchange funds back. Lastly, the violations of the FEA's 2008 membership terms discussed above are similar to the acts that comprise the fraud in the instant case.

Defendants contend that there is no link between the FEA membership requirements and the issue of defendants' intent to defraud and thus the evidence is not probative and is inadmissible. (Def. JMIL at 7.) Defendants base their argument on their reading of United States v. Lew, 875 F.2d 219 (9th Cir. 1989). (Def. JMIL at 6.) But the facts of Lew are inapposite. There, the defendant was charged with defrauding his clients, although his misrepresentations were directed at the government. Lew, 875 F.2d at 220-21. Here, the government does not contend that the bases for defendants' fraud of the Five Victim Clients (i.e., the fraudulent misrepresentations and material omissions relied on by the Five Victim Clients) was defendant Namvar's agreement, on behalf of NFE, to abide by certain FEA membership terms in 2008 (that were later violated). Rather, defendant Namvar's agreement to those membership terms, and the accompanying notice it put him on, is evidence of his knowledge and state of mind when he and defendant Tabatabai later carried out the charged scheme to defraud.

In addition, contrary to defendants' assertions (Def. JMIL at 8-10), the government's intended FEA evidence is not inadmissible pursuant to Rule 403 because it is not unfairly prejudicial and its probative value is not outweighed -- much less _substantially_ outweighed -- by any concerns of unfair prejudice to defendants. See Fed. R. Evid. 403. As the court

noted in <u>United States v. Parker</u>, 549 F.2d 1217, 1222 (9th Cir. 1977), evidence "is not rendered inadmissible because it is of a highly prejudicial nature . . . . The best evidence often is." Evidence unfairly prejudices a defendant "if it 'makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'" <u>United States v. Yazzie</u>, 59 F.3d 807, 811 (9th Cir. 1995) (quoting <u>United States v. Johnson</u>, 820 F.2d 1065, 1069 (9th Cir. 1987). There is no unfair prejudice to defendants here. The government's proposed FEA evidence is very straightforward. NFE chose to be a member of the FEA and marketed itself as such, embracing the imprimatur of legitimacy that came with FEA membership. In 2008, when renewing NFE's membership, defendant Namvar agreed to abide by certain terms, on behalf of NFE (which other evidence will show were violated).

As noted in the case law, any evidence that tends to incriminate a defendant is, by its nature, prejudicial to that defendant. Because, however, the probative value of the government's intended FEA evidence is great, there is little danger of unfair prejudice (e.g., the jury is unlikely to be emotionally inflamed by the proffered evidence), and Rule 403 therefore supports its admission.

### IV. CONCLUSION

For the foregoing reasons, the Court should deny defendants' joint motion <u>in limine</u> to exclude evidence at trial relating to the internal rules, standards, and practices of the FEA.