LAW OFFICES OF JAMES W. SPERTUS
JAMES W. SPERTUS (SBN 159825)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com

Attorneys for Defendant Hamid Tabatabai

SCHEPER KIM & HARRIS LLP
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
AMOS A. LOWDER (State Bar No. 269362)
alowder@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

Attorneys for Defendant Ezri Namvar

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>     v.<br><br>EZRI NAMVAR, aka Ezri Namvar Maghadam, and HAMID TABATABAI, aka Hamid Taba,<br><br>            Defendants. | CASE NO. CR 10-1055-PA<br><br>**EX PARTE APPLICATION FOR A CONTINUANCE OF TRIAL OR A RECESS OF TRIAL AT THE CONCLUSION OF THE GOVERNMENT'S CASE**<br><br>Date:         May 3, 2011<br>Time:        8:30 a.m.<br>Courtroom: 15<br>Judge:       The Honorable Percy Anderson |

Ex Parte Application (msh revisions).docx

1.

**DEFENDANTS' APPLICATION FOR A CONTINUANCE OR RECESS OF TRIAL**

1   Defendants Hamid Tabatabai and Ezri Namvar, by and through their counsel
2 of record, hereby apply *ex parte* for an order continuing the trial, or to recess the
3 trial for one week at the conclusion of the government's case-in-chief, in order to
4 enable defendants to comply with the Court's May 2, 2011, order issued at 3:12 p.m.
5 The Court's May 2 order requires defendants to make certain proffers to the Court
6 about the defense witnesses and evidence by 12:00 noon on May 4, 2011.  The
7 witnesses that the defendants will call in their case will depend on which witnesses
8 the government calls in its case-in-chief.  As of 7:00 p.m. on May 2, 2011, the
9 government still refused to produce its witness list to the defense, and refused to
10 produce that list to the defense prior to the start of trial on May 3, 2011.  Since
11 counsel for defendants will be in trial from 8:00 a.m. until 4:30 p.m. on May 3,
12 2011, and from 8:00 a.m. until 1:30 p.m. on May 4, 2010, it will be impossible to
13 comply with the Court's order as presently written.
14   Unless the Court either continues the trial, or recesses the trial after the
15 government rests its case, to enable the defense to comply with the Court's May 2,
16 2011 order, the defendants' Fifth Amendment due process right to present a defense
17 and their Sixth Amendment right to compulsory process would be violated by the
18 Court's exclusion of witnesses based on their inability to comply with the Court's
19 May 2, 2011 order.
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

1. On May 2, 2011, at 4:00 p.m., counsel for Defendant Tabatabai met and conferred with AUSA Brian Klein about the relief sought by this ex parte application, and Brian Klein stated that the Government opposes the relief sought by this ex parte application.

DATED: May 2, 2011

Respectfully submitted,

LAW OFFICES OF JAMES W. SPERTUS

By: /S_____
James W. Spertus
Attorney for Hamid Tabatabai

SCHEPER KIM & HARRIS LLP

By: /S_____
Marc Harris
Attorney for Ezri Namvar

## MEMORANDUM OF POINTS AND AUTHORITIES

On February 22, 2011, the Government filed a Motion in Limine to preclude defenses that had been proffered by Mr. Tabatabai and Mr. Namvar. The government sought to prevent defendants from (1) offering any evidence of their good faith belief in the truth of their representations to the alleged victims, and (2) calling any former Namco Financial Exchange Corporation ("NFE") clients as witnesses, other than the alleged "victim clients." The defendants opposed the motion on March 7, 2011 and, after taking the motion under submission, the Court granted the motion on April 27, 2011.[1] The government then filed a trial memorandum that dramatically changed the government's theory of this case. Specifically, the government abandoned its theory that there were misrepresentations made by defendants to obtain money, and instead decided to proceed only on the theory that there was a "scheme to defraud" based on a single paragraph in a form Exchange Agreement.

In response to the government's changed theory of the case, the defendants requested a status conference on Monday, May 2, 2011, to focus the Court on the changes in the government's theory, and to seek clarification from the Court as to what evidence the defense would be permitted to introduce, and what evidence defense counsel could refer to in their opening statements. At the May 2 hearing, the Court declined to provide further clarification regarding its order, stating that it would rule on objections (if made) during the trial.

The May 2 hearing concluded at approximately 11:15 a.m. On May 2, 2011, at 3:12 p.m., the Court ordered a detailed proffer from the defendants by 12:00 noon on May 4, 2011. It would be impossible for defendants to comply with the Court's

---

[1] The Court framed its ruling as granting "the Government's motion in limine to preclude the impermissible defenses of intent to repay and not all clients were defrauded." (Dkt. 766).

Ex Parte Application (msh revisions).docx     1.
**DEFENDANTS' APPLICATION FOR A CONTINUANCE OR RECESS OF TRIAL**

May 2, 2011 order, as things presently stand. Unless the Court either continues the trial, or recesses the trial after the government rests its case to enable the defense to comply with the Court's May 2, 2011 order, the defendants' Fifth Amendment due process right to present a defense and their Sixth Amendment right to compulsory process would be violated by the Court's exclusion of witnesses based on their inability to comply with the May 2, 2011 order.

Trial of this case will begin at 8:00 a.m. on May 3 and continue until 4:30 pm that day. Trial will then resume on May 4 at 8:00 a.m., and continue until 1:30 p.m. that day. It is impossible for the defendants to comply with the Courts May 2 Order while they have been simultaneously ordered to sit in the courtroom for the beginning of trial. It will take several days to compile the materials necessary for compliance with the Court's May 2 order.[2] The Court took the government motions in limine under submission on March 28, 2011, issued an order granting the motions on April 27, 2011, and then ordered the proffer on the day before trial, May 2, 2011, at 3:12 p.m.

Separately, it is difficult for the defense to comply with the order at this time because the defendants will put on a defense that is responsive to the government's case. The government has changed its theory dramatically in the weeks leading up to trial, and as late as May 2, 2011, the government filed a motion to dismiss Count Two of the five-count indictment. The government's case is likely to morph further

---

[2] The process will be time-consuming for several reasons. First, based on the Court's ruling of April 27, precluding the defense from calling witnesses covered by the government's motion in limine, defendants have not been preparing such witnesses to testify or gathering the materials called for by the Court's May 2 order. Second, many of the documents requested by the Court's order are not presently in defendants' custody or control, as the Bankruptcy Trustees have taken control of all NFE documents. Third, it will be a laborious (if not impossible) process to go through with the witnesses each and every statement or document they relied upon to form their beliefs that neither Ezri Namvar nor Hamid Tabatabai defrauded them.

Ex Parte Application (msh revisions).docx    2

**DEFENDANTS' APPLICATION FOR A CONTINUANCE OR RECESS OF TRIAL**

1. during trial, and the defendants intend to call witnesses and put on evidence to
2. respond to the evidence presented by the government.  Defendants raised these
3. shifting theories of prosecution with the Court on April 27, and again on May 2.  It
4. is not possible to foresee what witnesses and evidence will be responsive to the
5. government's case until the government puts on that evidence.  The government has
6. continually refused to even share its witness list with the defense until the Court
7. takes the bench on the first day of trial.

   Once the government rests after its case-in-chief, the defendants will then be able to proffer the specific testimony it seeks to elicit from defense witnesses, but will require time to comply with the details ordered by the Court.  A one-week recess after the government's case would enable the defense to present the specifics set forth in the Court's May 2, 2011 order.  Specifically, the Court ordered as follows:

   > The proffers shall state separately and specifically each witness that each defendant expects to call at trial in support of either of these defenses, the specific testimony the witness will offer, the date of the witness' investment, if any, with Namco Financial Exchange, Inc., the date of the return of the investment, and explain why such testimony is relevant in this case. The proffers shall include an identification of each document by title, author and date relied on by the witness or offered by the defense in support of the testimony he or she will give at trial. Counsel shall attach a copy of each document to the offer of proof. If a witness will be relying on the statements of any person for his or her testimony, the offer of proof shall identify in full each such statement. If the statement is recorded or written, counsel shall attach a copy of the statement to the offer of proof. If the witness did not rely on any documents or statements in forming his opinion, the proffer shall include a representation confirming that fact.

   A one-week recess at the conclusion of the government's case would enable the defense to comply with this order.

   The defense contends that the scope of the proposed evidence the defense seeks to introduce, and the bases for its admission, was set forth at length in the opposition to the government motion in limine and at the lengthy hearings the Court has held on the issue.  Contrary to the government's characterization (now adopted by the Court), the defense does not intend to offer evidence of "intent to repay" or

1  "not all clients were defrauded." With respect to the former, defendants do not
2  intend to argue that their intent to repay money that had been stolen is a defense to
3  wire fraud. Rather, defendants intend to offer evidence that they never intended to,
4  and did not, steal the money in the first place. The government intends to argue that
5  the defendants knew that NFE would not have the money available to complete the
6  exchanges for the four subject customers. The defendants must, therefore, be
7  permitted to offer evidence that they did intend for, and believe, that the money
8  would be available to complete the exchanges. This goes directly to the truth of the
9  alleged misrepresentations, as well as the intent to defraud element of the offense.
10 *See United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) (a "good faith belief
11 in the truth of the misrepresentation may negate intent to defraud").
12      With respect to the latter point, defendants have never argued that the fact that
13 "not all clients were defrauded" is a defense to wire fraud. Rather, the defense
14 contends that the manner in which other exchanges were handled demonstrates that
15 defendants did not intend to defraud the subject customers at issue in this case. This
16 argument is particularly appropriate given the government's 11th hour modification
17 of its trial strategy. As set forth in its Trial Memorandum (filed on April 28, 2011),
18 the government will argue that the scheme to defraud was to lie to the subject
19 customers about where their money would be held during the pendency of the
20 exchange. (Trial Memorandum, pp. 12-13). No direct misrepresentations or false
21 statements are alleged to have been made. Rather, the only manifestation of the
22 scheme to defraud the government intends to rely upon is a single paragraph of
23 NFE's form exchange agreement ("Paragraph 5").
24      Defendants intend to introduce evidence that Paragraph 5 was included in the
25 same exchange agreements entered into with hundreds of other customers over a
26 several year period. Thus, to the extent this paragraph represents the scheme, the
27 scheme was perpetrated against hundreds of others. The fact that 1,400 other
28 exchanges, totaling almost $2 billion, were completed successfully notwithstanding

1  the presence of Paragraph 5 undercuts the government's claim that Paragraph 5 was
2  included as part of a scheme to defraud, or was calculated to deceive.  The defense
3  must be permitted to: (1) offer evidence regarding the number and magnitude of
4  successful exchange transactions where the same exchange agreement was used; and
5  (2) call witnesses who received the exchange agreement, with Paragraph 5 included,
6  regarding their successful experiences with NFE, their conversations with
7  defendants, and their overall perceptions of the "scheme."

8  In *United States v. Thomas*, 32 F.3d 418, 420-21 (9th Cir. 1994), a case relied
9  upon and discussed extensively in a brief filed by defendants on March 7, 2011, the
10 Ninth Circuit held that it was reversible error for the district court to refuse to allow
11 the defense to call as witnesses customers to whom similar statements had been
12 made as those made to the "charged victims."  In language directly applicable to this
13 case, the court noted:  "The 'scheme' to defraud in the indictment unquestionably
14 involved individuals other than those named in connection with specific mailings,
15 and there is no basis for concluding that the scheme defendant had devised was
16 intended to impact unnamed individuals any differently than those the government
17 chose to name."  *Id*. at 420.  The court held that the district court erred because "the
18 jury was prevented from hearing any direct evidence either of the growers' receipt
19 of benefits, or of their overall perception of the scheme."  *Id*.

20 As in *Thomas*, the principal issue in this case is whether defendants devised a
21 scheme intended to defraud the (now) four subject customers.  Each defendant
22 should be "permitted to develop fully and fairly all of the evidence that would tend
23 to exonerate him."  *Id*. at 421.  The defense should be permitted to offer this highly
24 relevant evidence without having to jump through the extraordinary hoops that the
25 Court has suggested on the eve of trial.

26 The government's attempt to preclude the defense from calling "non-victim
27 clients" as witnesses is simply misplaced.  The Ninth Circuit has held that it is
28 reversible error to preclude the defense from offering testimony of "non-charged"

1  customers simply because they are not named as victims in the indictment.  The
2  government's unsupported relevance argument to the contrary misses the point that
3  the subject evidence bears directly on defendants' intent to defraud.  This is
4  particularly true in this case, where the defense expects the prosecution to rely not
5  on direct misrepresentations made by defendants to the alleged victims, but on an
6  established course of dealing the government now deems to have been fraudulent.
7  Under these circumstances, defendants' interactions with its other clients are clearly
8  relevant.
9       The law is clear that a defendant in a fraud case must be given wide latitude in
10 putting on evidence related to the critical issue of intent to defraud.  The government
11 has successfully cut the legs out from the defense on this critical issue before the
12 case has even begun.  Even if the government were correct with regard to what
13 constitutes a legal defense in this case (which it is not), it would be error to preclude
14 the defense from putting on evidence that bears on their intent to defraud.  The
15 exclusion of such evidence would unfairly prejudice defendants' ability to challenge
16 the allegations contained in the Indictment and the Court should reject the
17 government's request and give the defense a reasonable amount of time to make a
18 reasonable proffer to the Court.
19      Obviously, the holding in *Thomas* is directly applicable to the instant case.
20 The Court has ordered proffers, which the defense intends to make, but it is
21 impossible to make such proffers before the government presents its case, and under
22 the extremely onerous time frame the Court has imposed on defendants on the eve
23 of trial.  The Court's order requires a high level of detail, and the deadline of 12:00
24 noon Wednesday for an order that issued at 3:12 p.m. on Monday is not possible
25 //
26 //
27 //
28 //

1  since the parties will be in trial all day Tuesday and Wednesday.  Respectfully,
2  defendants request a one week recess  after the government rests its case to comply
3  with the Court's order.
4
5  DATED: May 2, 2011                    Respectfully submitted,
6                                        LAW OFFICES OF JAMES W. SPERTUS
7
8                                        By:    /S
                                                James W. Spertus
9                                               Attorney for Hamid Tabatabai
10
11                                       SCHEPER KIM & HARRIS LLP
12
13                                       By:    /S
                                                Marc Harris
14                                              Attorney for Ezri Namvar
15
16
17
18
19
20
21
22
23
24
25
26
27
28