**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
AMOS A. LOWDER (State Bar No. 269362)
alowder@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

**Attorneys for Defendant Ezri Namvar**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>EZRI NAMVAR, aka Ezri Namvar Maghadam, and HAMID TABATABAI, aka Hamid Taba,<br><br>Defendants. | CASE NO. CR 10-1055-PA<br><br>**DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   August 8, 2011<br>Time:   3:00 p.m.<br>Ctrm:   15<br><br>Trial Date:        May 3, 2011 |

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 8, 2011, at 3:00 p.m., or as soon thereafter as is convenient for the Court, in the courtroom of the Honorable Percy Anderson, Courtroom 15, 312 North Spring Street, Los Angeles, California 90012, defendant Ezri Namvar will and hereby does move the Court for a motion for judgment of acquittal on all counts pursuant to Rule 29 and a motion for new trial on all counts pursuant to Rule 33.

1    Mr. Namvar's motion is based upon this Notice of Motion and Motion, the

2  attached Memorandum of Points and Authorities, the declaration of Amos A.

3  Lowder, the Court's files and records in this case, and any such argument or

4  evidence that may be presented at the hearing on this Motion.

5

6  DATED: June 2, 2011              SCHEPER KIM & HARRIS LLP
                                    MARC S. HARRIS
7                                   AMOS A. LOWDER

8

9

10                                  By:  _____/S/  Marc S. Harris_____
                                         Marc S. Harris
11                                       Attorneys for Defendant Ezri Namvar

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO
RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION. ..................................................................................................3

II.  PROCEDURAL BACKGROUND. .......................................................................4

III.  DISCUSSION........................................................................................................4

   A.  Federal Rule of Criminal Procedure 29. ...................................................4

      1.  Standard...........................................................................................4

      2.  There Was Insufficient Evidence Adduced At Trial To Support Guilty Verdicts. ...................................................5

         (a)  No Evidence Suggests That Mr. Namvar Intended To Deceive The Four Identified Customers.....................5

         (b)  Mr. Namvar Did Not Have A Duty To Disclose NFE's Business Model Absent A Fiduciary Relationship. ...................................................6

         (c)  The Government Did Not Offer Any Evidence To Prove The Existence Of A Scheme To Defraud. ..............7

   B.  Federal Rule Of Criminal Procedure 33. ..................................................8

      1.  Standard...........................................................................................9

      2.  The Interests Of Justice Require A New Trial For Mr. Namvar. ...................................................9

         (a)  The Court Precluded The Defense From Introducing Evidence Of Mr. Namvar's Intent And Efforts To Complete The Subject Exchange Transactions...............10

            (i)  The Testimony Of Nicholas Klein. ......................11

            (ii)  The Government Argued In Rebuttal That Mr. Namvar Never Intended To Complete The Subject Exchanges. .........................11

         (b)  The Court Precluded The Defense From Putting On Evidence That The Agent For Two Of The Customers Was Aware Of The Manner In Which Funds Were Handled By NFE.........................12

         (c)  The Court Precluded the Defense from Calling Other Customers of NFE..............................................14

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

1

## TABLE OF CONTENTS (cont'd)

2

3
**Page**

4

5
(d)      The Jury Was Not Provided With The Defense
Exhibits, And Was Incorrectly Told That They Had
All Exhibits When They Specifically Asked For The

6
Defense Exhibits. ........................................................16

7
(e)      The Prosecutor Improperly Testified During Closing
Argument, Introducing Facts That Were Not

8
Presented At Trial. ......................................................16

9
IV.     CONCLUSION................................................................................19

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Ackerman v. Schwartz,*
    947 F.2d 841 (7th Cir. 1991)......................................................13

*Darden v. Wainwright,*
    477 U.S. 168, 182, (1986) ........................................................ 17

*Hein v. Sullivan,*
    601 F.3d 897 (9th Cir. 2010) ....................................................17

*Thompson v. Paul,*
    547 F.3d 1055 (9th Cir. 2008) ..................................................13

*United States v. A. Lanoy Alston,*
    974 F. 2d 1206 (9th Cir. 1992) .................................................. 9

*United States v. Collins,*
    604 F.3d 481 (7th Cir. 2010) ....................................................16

*United States v. Dowling,*
    739 F.2d 1445 (9th Cir. 1984) ................................................... 7

*United States v. Ethridge,*
    948 F.2d 1215 (11th Cir. 1991) ................................................15

*United States v. Ferguson,*
    246 F. 3d 129 (2d Cir. 1997) .................................................... 9

*United States v. Figueroa-Paz,*
    468 F. 2d 1055 (9th Cir. 1972) .................................................. 5

*United States v. Foshee,*
    578 F.2d 629 (5th Cir. 1978) ....................................................15

*United States v. Garvin,*
    565 F.2d 519 (8th Cir. 1977) ....................................................15

*United States v. Glen,*
    312 F. 3d 58 (2d Cir. 2002) ...................................................... 5

*United States v. Lopez,*
    74 F. 3d 575, 577 (5th Cir. 1996) .............................................. 5

*United States v. Martinez,*
    54 F. 3d 1040 (2d Cir. 1995) .................................................... 5

*United States v. Simtob,*
    901 F.2d 799 (9th Cir. 1990)................................................12, 17

iii

# TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*United States v. Thomas,*
   32 F.3d 418 (9th Cir. 1994)....................................................9, 14, 15

*United States v. Ubl,*
   472 F. Supp. 1236 (N.D. Ohio 1979) ........................................ 4

## State Cases

*In re Marriage of Cloney,*
   91 Cal. App. 4th 429 (2001)........................................................13

*O'Riordan v. Federal Kemper Life Assurance Co.,*
   36 Cal. 4th 281 (Cal. 2005)........................................................13

*Vanciel v. Kumle,*
   26 Cal. 2d 732 (Cal. 1945) ........................................................13

## Federal Statutes

18 United States Code § 1343 .................................................... 9

## Federal Rules

Federal Rule of Criminal Procedure 29 ...........................................3, 4, 8

Federal Rule of Criminal Procedure 29(a)....................................... 4

Federal Rule of Criminal Procedure 33 .......................................3, 4, 8, 9

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO
RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION.

Defendant Ezri Namvar was convicted following a two-week jury trial of four counts of wire fraud based on the failure of his company, Namco Financial Exchange ("NFE"), to complete four 1031 exchange transactions in the Fall of 2008. After alleging in the Indictment and promising the Court in pre-trial hearings that the government intended to prove that Mr. Namvar and co-defendant Hamid Tabatabai made numerous misrepresentations to the alleged victims to induce them to part with their money, the prosecutors failed to introduce evidence of a single misrepresentation by either man. After presenting extensive evidence regarding the subjective expectations of the four alleged victims regarding the exchange transactions, the government objected to the defense efforts to introduce evidence of defendants' interactions with the agent of two of the customers regarding NFE's business model and the manner in which exchange funds would be handled. After promising the Court that it would try a narrow case, not dependent on the fact that the subject customers lost money, the prosecutors made the losses suffered by the alleged victims the centerpiece of their closing argument. The prosecutors' tactics, and the erroneous evidentiary rulings the government elicited through its misrepresentations to the Court, led to a trial that was grossly unfair to Mr. Namvar. This unfairness was compounded by the fact that none of the exhibits introduced by the defense in the case were provided to the jury during its deliberations, notwithstanding a specific request by the jury for the defense exhibits.

Based on these procedural and substantive shortcomings, Mr. Namvar renews his motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, and moves the Court, in the alternative, for a new trial pursuant to Rule 33.

## II. <u>PROCEDURAL BACKGROUND.</u>

The trial in this case began on May 3, 2011. Following the close of the government's case, Mr. Namvar moved for a judgment of acquittal on all counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure, on the ground that the government failed to present sufficient evidence to allow a rational trier of fact to find him guilty beyond a reasonable doubt. The Court, after hearing brief arguments from counsel for Mr. Namvar and counsel for the government, denied Mr. Namvar's Rule 29 motion. Thereafter, Mr. Namvar and Mr. Tabatabai presented their respective cases to the jury. After closing arguments, but prior to submission to the jury, Mr. Namvar again moved for a judgment of acquittal on all counts pursuant to Rule 29. The Court denied Mr. Namvar's renewed Rule 29 motion.

The jury returned a unanimous verdict on Thursday, May 19, 2011, finding Mr. Namvar guilty on all four counts of the Indictment. Mr. Namvar now moves for a judgment of acquittal on all counts pursuant to Rule 29 and also for a new trial on all counts pursuant to Rule 33.

## III. <u>DISCUSSION.</u>

### A. <u>Federal Rule of Criminal Procedure 29.</u>

Mr. Namvar moves for a judgment of acquittal on all counts of conviction because there was insufficient evidence adduced at trial that Mr. Namvar knowingly participated in a scheme to defraud the four customers identified in the Indictment.

#### 1. <u>Standard.</u>

Federal Rule of Criminal Procedure 29(a) provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Rule 29 performs a vital function in a criminal case of protecting the defendants from conviction on the basis of inadequate evidence. <u>United States v. Ubl</u>, 472 F. Supp. 1236, 1237 (N.D. Ohio 1979). As the Ninth Circuit has stated, "[t]he test is whether at the time of the

4

1  motion there was relevant evidence from which the jury could reasonably find

2  [defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most

3  favorable to the Government." United States v. Figueroa-Paz, 468 F. 2d 1055, 1058

4  (9th Cir. 1972). Where a fact to be proved is also an element of the offense, "it is not

5  enough that the inferences in the government's favor are permissible." United

6  States v. Martinez, 54 F. 3d 1040, 1043 (2d Cir. 1995). The Court "must also be

7  satisfied that the inferences are sufficiently supported to permit a rational juror to

8  find that the element, like all elements, is established beyond a reasonable doubt."

9  Id. Thus, "if the evidence viewed in the light most favorable to the prosecution

10  gives 'equal or nearly equal circumstantial support to a theory of guilt and a theory

11  of innocence,' then 'a reasonable jury must necessarily entertain a reasonable

12  doubt.'" United States v. Glen, 312 F. 3d 58, 70 (2d Cir. 2002) (quoting United

13  States v. Lopez, 74 F. 3d 575, 577 (5th Cir. 1996)).

14         2.    There Was Insufficient Evidence Adduced At Trial To Support

15                  Guilty Verdicts.

16       The government failed to present any evidence, direct or circumstantial,

17  suggesting that Mr. Namvar deceived or intended to deceive the four identified

18  customers regarding how their exchange funds would be handled. Instead, the

19  government presented a case consisting of broad theories of liability based on Mr.

20  Namvar's wealth and stature, his ownership of NFE and uninformed customer

21  opinions and assumptions regarding NFE's business model. This evidence was not

22  sufficient to meet the standard outlined above.

23         (a)    No Evidence Suggests That Mr. Namvar Intended To

24                  Deceive The Four Identified Customers.

25       The government's ostensible theory at trial was that defendants participated in

26  a scheme to deceive the subject clients with respect to the manner in which their

27

28

1031 exchange funds would be held during the pendency of the exchange transactions.[1]  The evidence was uncontroverted that no one at NFE ever told the clients that their funds would be handled in any particular manner – none of the clients testified that they were told anything false or misleading by Mr. Namvar or anyone associated with NFE, and none of the NFE employees testified to any false or misleading statements about how the funds were to be handled.  Moreover, the evidence introduced at trial showed that Mr. Namvar never directed anyone to lie, mislead or deceive NFE's customers regarding how the exchange proceeds would be handled.  The evidence presented by the government merely indicated that each of the four customers entered into the transactions with preconceived notions regarding how their funds would be held.[2]  There was no evidence that these expectations were ever communicated to Mr. Namvar or anyone acting on behalf of NFE.  Thus, there is no evidence in the record that Mr. Namvar took any action for the purpose of deceiving or cheating any of the four identified customers with respect to how their funds would be handled or any other aspect of the subject exchange transactions.

> (b)   Mr. Namvar Did Not Have A Duty To Disclose NFE's Business Model Absent A Fiduciary Relationship.

Absent affirmative acts calculated to deceive, the law in this circuit is clear that the failure to disclose material information, without the breach of an

---

[1] As discussed below, the government's closing argument abandoned this narrow theory in favor of a claim that defendants stole the money of these customers, *i.e.*, they took the money with no intention of returning it.

[2] Two of the clients testified that their understandings of how the exchange funds would be handled were based in part on discussions they had with their accountant and advisor, Joseph Mandelbaum.  The defense was prevented from offering evidence relating to conversations defendants had with Mr. Mandelbaum on this very issue.

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

1  independent duty to do so, cannot form the basis for a wire fraud conviction.  United
2  States v. Dowling, 739 F.2d 1445, 1449 (9th Cir. 1984).  As discussed previously,
3  there is no evidence in the record that Mr. Namvar took steps to deceive the four
4  identified customers, and the government failed to present any evidence at trial that
5  Mr. Namvar had a duty to disclose NFE's business model to the four identified
6  customers.  Therefore, the mere fact that the customers were not told how their
7  money would be handled during the exchange period is insufficient to support the
8  jury's verdict in this case.

9            (c)    The Government Did Not Offer Any Evidence To Prove
10                 The Existence Of A Scheme To Defraud.

11       No evidence was presented from which the jury could find beyond a
12  reasonable doubt that a scheme existed in this case.  The jury instructions given by
13  the Court define a scheme to defraud as a "deliberate plan of action or course of
14  conduct by which someone intends to deceive or to cheat another or by which
15  someone intends to deprive another of something of value."  The record is entirely
16  devoid of any evidence, direct or circumstantial, that a deliberate plan of action to
17  deceive existed in this case.

18       In closing argument, the government catalogued for the jury the evidence that
19  it claimed proved that Mr. Namvar participated in a scheme to defraud.  Most of the
20  evidence related to Mr. Namvar's position within the company, his wealth and his
21  experience as a "savvy businessman."  Of course, none of this evidence establishes
22  participation in a scheme to defraud.  The government also argued that Mr. Namvar
23  was aware of NFE's business practice of regularly transferring funds to and from
24  Namco Capital Group ("NCG").  However, there is nothing inherently criminal in
25  transferring money back and forth between NFE and NCG.  The fraud, if there was
26  one, was in deceiving the clients as to these transactions.  On that point, the
27  government offered nothing.

28       There was no evidence whatsoever that Mr. Namvar or any of NFE's

1    employees took deliberate steps to mislead or deceive the alleged victims regarding

2    how their exchange proceeds would be handled.  No witness testified to any

3    discussion regarding the issue, and there are no written communications between the

4    clients and NFE (much less Mr. Namvar) on the subject.  The mere suggestion by

5    the government that Mr. Namvar committed fraud is insufficient to overcome the

6    complete lack of evidence of any deliberate plan to deceive.  It is the government's

7    burden to prove, via evidence, not argument, that a scheme existed.  They failed to

8    do so in this case.[3]

9       Based on the government's failure to present evidence that supports a finding

10    of guilt beyond a reasonable doubt, this Court should enter a judgment of acquittal

11    pursuant to Rule 29.

12    **B.**      **Federal Rule Of Criminal Procedure 33.**

13       Mr. Namvar moves for a new trial on the following grounds:  (1) the defense

14    was precluded from introducing evidence of Mr. Namvar's intent to complete the

15    subject transactions; (2) the Court refused to admit evidence that Mr. Namvar

16    openly discussed his business model with the agent of two of the four customers;

17    (3) the Court precluded the defense from calling other NFE customers as witnesses;

18    (4) the jury was not provided with the defense exhibits during deliberations; and

19    (5) the prosecutor improperly testified during his rebuttal argument.

20

21    _____

22    [3] The closest the government came to introducing evidence of a misrepresentation

23    was a sentence in paragraph 5 of the form NFE Exchange Agreement, which could
      be construed to require NFE to hold exchange funds in an NFE bank account during

24    the entire exchange period.  However, as the government acknowledged in its
      closing argument "the Exchange Agreement could be interpreted to mean that the

25    money could be transferred."  Moreover, the government did not introduce any

26    evidence that Mr. Namvar ever saw the Exchange Agreement, was aware of the
      contents of paragraph 5, or intended that paragraph 5 deceive clients into thinking

27    that their money would be held in a bank account.

28

1.   <u>Standard.</u>

Rule 33 of the Federal Rules of Criminal Procedure provides that "upon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." <u>United States v. Ferguson</u>, 246 F. 3d 129, 134 (2d Cir. 1997).  A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal.  <u>United States v. A. Lanoy Alston</u>, 974 F. 2d 1206, 1211 (9th Cir. 1992).  In ruling on a motion for new trial, "[t]he district court need not view the evidence in the light most favorable to the verdict; it may weigh the evidence and in so doing evaluate for itself the credibility of the witnesses." <u>Id</u>.  If the Court determines that the evidence preponderates heavily against the verdict, it may ignore "the abstract sufficiency of the evidence to sustain the verdict." <u>Id</u>.

2.   <u>The Interests Of Justice Require A New Trial For Mr. Namvar.</u>

The critical question in a wire fraud case under 18 U.S.C. § 1343 is whether the defendant acted with the intent to defraud. This is particularly true in instances where the government fails to identify a fraudulent statement.  A defendant charged with wire fraud should be given wide latitude to present evidence that bears on the critical issue of intent to defraud.  <u>United States v. Thomas</u>, 32 F.3d 418, 421 (9th Cir. 1994).

In this case, the government presented an extremely editorialized account of Mr. Namvar's conduct and state of mind as it pertained to the four customers identified in the Indictment.  The Court afforded the government every opportunity to offer evidence, no matter how remote, which could conceivably bear on Mr. Namvar's intent to defraud.  On the other hand, the defense was not afforded the same latitude to present evidence to rebut the government's allegations.  The Court excluded evidence that would have directly negated the government's allegations that Mr. Namvar had the intent to defraud.

1
2
3

    (a)    <u>The Court Precluded The Defense From Introducing</u>
<u>Evidence Of Mr. Namvar's Intent And Efforts To</u>
<u>Complete The Subject Exchange Transactions.</u>

4
5
6
7
8
9
10
11

    The Indictment alleges that defendants Mr. Namvar and Mr. Tabatabai engaged in a scheme to defraud five customers of NFE, a company involved in "1031 exchange" transactions. According to the government's theory of the case, Mr. Namvar and Mr. Tabatabai obtained money from these five customers by means of false and fraudulent representations. The alleged misrepresentations related to the manner in which the funds deposited with NFE in connection with the 1031 exchanges would be handled, and the availability of those funds to customers during the pendency of the exchanges.

12
13
14
15
16
17
18
19
20

    From the outset of the proceedings, the government made every attempt to limit the defense's ability to present relevant evidence to rebut the allegations contained in the Indictment. Prior to trial, the government moved *in limine* to preclude the defense from offering testimony from other customers of NFE and also to preclude the defense from offering any evidence pertaining to Mr. Namvar's intent to complete the subject exchanges. The government justified its request by representing to the Court, orally and in writing, that its theory of the case was extremely narrow and the evidence it sought to preclude was irrelevant to the allegations contained in the Indictment.

21
22
23
24
25
26
27

    Based on the government's representations, the Court tentatively ruled prior to trial that defendants would not be permitted to introduce evidence of their intent to complete the subject exchanges. Throughout the trial, defendants asked the Court to revisit its tentative ruling based on the government's introduction of evidence that strayed far from the narrow theory posited to the Court before trial. The Court declined to allow the defense to present evidence that would negate any claim that defendants did not intend to complete the subject transactions.

28

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

1            (i)      The Testimony Of Nicholas Klein.

2        Of particular significance, the defense sought to present evidence that Mr.

3    Namvar always intended to complete the transactions identified in the Indictment,

4    and that he made sincere, tangible and contemporaneous efforts to fulfill NFE's

5    obligations to the identified customers.  Through the testimony of Nicholas Klein,

6    an attorney who worked closely with Mr. Namvar, the defense intended to detail Mr.

7    Namvar's efforts to sell several valuable assets in order to complete the subject

8    exchanges.  The defense proffered the fact that Mr. Klein would testify that Mr.

9    Namvar had signed contracts to sell several properties during the summer of 2008,

10   the proceeds from which would have been many times more than the amount due to

11   the subject customers of NFE.[4]  Mr. Klein's testimony represented substantial

12   evidence that Mr. Namvar did not intend to harm, deceive or cheat the customers

13   identified in the Indictment in that he fully intended and believed that the funds were

14   available to complete the subject exchange transactions.  The preclusion of this

15   evidence severely limited the defense's ability to rebut the allegations presented by

16   the government, and foreclosed the opportunity to present the jury with a complete

17   picture of the events and circumstances alleged in the Indictment.

18           (ii)     The Government Argued In Rebuttal That Mr.

19                    Namvar Never Intended To Complete The Subject

20                    Exchanges.

21       The prejudice from the Court's preclusion of the evidence demonstrating Mr.

22   Namvar's intent to complete the subject transactions was greatly exacerbated by the

23   government's improper closing argument.  After having argued for months that

24   defendants' intent to complete the subject exchange transactions was irrelevant, the

25   _____

26   [4] Mr. Klein would also have testified that he prepared, and Mr. Namvar signed,
     Assignments that formally assigned the proceeds of these real estate transactions to

27   NFE.

28

                                            11
     _____
     DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO
                RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

1  government made defendants' failure to complete the transactions the centerpiece of

2  its closing argument.  Particularly in its rebuttal argument, when defendants did not

3  have the opportunity to respond, government counsel repeatedly exhorted the jury to

4  convict defendants because they "stole the victims' money."  Government counsel

5  stressed the fact that, to this day, none of the victims got their money back.  This

6  argument flagrantly violated the Court's evidentiary rulings and severely prejudiced

7  the defense.

8      The government clearly took improper advantage of the Court's evidentiary

9  rulings.  Whether or not those rulings were correct, the Court should order a new

10  trial based on the government's improper conduct.  See United States v. Simtob, 901

11  F.2d 799, 806 (9th Cir. 1990) ("prosecutorial misconduct invites reversal if it

12  appears more probable than not that the alleged misconduct affected the jury's

13  verdict").

14          (b)    The Court Precluded The Defense From Putting On

15                 Evidence That The Agent For Two Of The Customers

16                 Was Aware Of The Manner In Which Funds Were

17                 Handled By NFE.

18      Joseph Mandelbaum, an accountant, referred two of the four identified

19  customers to NFE.  The evidence established that, with respect to at least one of

20  those customers (Vasquez), *all* contact between the customer and NFE was through

21  Mr. Mandelbaum's office.[5]  The defense sought to show that Mr. Namvar openly

22  discussed with Mr. Mandelbaum the fact that Mr. Namvar moved clients' money

23  

_____

24  [5] The Laskas were also introduced to NFE by Mr. Mandelbaum, and Mr. Laska

25  testified that his views as to how his exchange funds were to be handled was based,

26  in part, on information he received from Mr. Mandelbaum; however, there was a

     dispute at trial as to whether Mr. Mandelbaum's office continued to represent Mr.

27  Laska in connection with the 2008 transaction.

28  

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO
RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33

1  from NFE to NCG in order to "make the money work" during the exchange period.

2  The defense also sought to show that Mr. Mandelbaum referred clients to NFE for

3  the very reason that NFE's business strategy resulted in a high interest yield on

4  clients' money.  At trial, the Court precluded defendants from offering evidence of

5  their communications with Mr. Mandelbaum.

6       It is well-settled in California that knowledge of an agent acting within the

7  scope of his authority is the knowledge of his principal.  <u>See Vanciel v. Kumle</u>, 26

8  Cal. 2d 732, 734 (Cal. 1945); <u>see also In re Marriage of Cloney</u>, 91 Cal. App. 4th

9  429, 439 (2001) ("As a general rule, an agent has a duty to disclose material matters

10  to his or her principal, and the actual knowledge of the agent is imputed to the

11  principal.").[6]  As an accountant, Mr. Mandelbaum's relationship with his clients was

12  that of an agent to a principal, and thus his knowledge of Mr. Namvar's business

13  practices can be imputed to the investors whom he referred to Mr. Namvar's

14  company.  That Mr. Mandelbaum may claim he never passed on what he knew

15  about Mr. Namvar's business practices to his clients is of no import, as "[t]he fact

16  that the knowledge acquired by the agent was not actually communicated to the

17  principal … does not prevent operation of the rule." <u>O'Riordan v. Federal Kemper</u>

18  <u>Life Assurance Co.</u>, 36 Cal. 4th 281, 288 (Cal. 2005) (internal quotation marks

19  omitted).

20       The government alleged that Mr. Namvar defrauded the identified customers

21  by misleading them about what was going to happen to their money after it was

22  deposited with NFE.  Given this theory of prosecution, any evidence that defendants

23  openly discussed the business methods at NFE with the victim clients or their agents

24  is relevant to Mr. Namvar's state of mind, as it negates the government's allegation

---

26  [6] The rule in federal court is the same.  "To give information to an agent is to give it

27  to the principal." <u>Ackerman v. Schwartz</u>, 947 F.2d 841, 847 (7th Cir. 1991), cited approvingly in <u>Thompson v. Paul</u>, 547 F.3d 1055, 1062-63 (9th Cir. 2008).

28

that defendants knowingly concealed material facts from them.  The preclusion of this evidence prejudiced Mr. Namvar and further limited his ability to present evidence on the critical issue of intent to defraud.

(c)   <u>The Court Precluded the Defense from Calling Other Customers of NFE.</u>

The government's proffered theory in this case was that the alleged scheme only involved the four indentified victims.[7]  However, the government failed to produce any evidence at trial that Mr. Namvar intended to treat the four identified customers differently than dozens of other customers who used NFE during the time period in question.  Thus, the alleged scheme was not specifically directed at the four customers, but rather involved an established course of dealing the government deemed to have been fraudulent.

When an alleged scheme impacts other customers in the same manner as those the government chose to name in an indictment, testimony from unidentified customers is highly relevant to the issue of intent.  In <u>Thomas</u>, the Ninth Circuit noted that the government did not proffer, and the district court did not rely on, any "substantial countervailing justifications for limiting the relevant evidence that the jury could consider by excluding testimony of other growers" impacted by the alleged scheme.  <u>Id</u>. at 421.  In response to the government's argument against the testimony of the "non-victim" growers the court noted:

> When trying to reach a conclusion about the elusive issue of intent, the subjective perceptions of the people most intimately involved with defendant and his averaging scheme could have had a significantly different impact on the jury than the expert's bare conclusion that these

---

[7] Although the Indictment alleged a scheme to defraud five clients of NFE, the government argued at trial that the scheme was focused on only four clients.

14

1    growers had not lost money.

2    Id. at 421.

3    The court concluded that "relevant case law in fraud prosecutions supports the

4    defendant's position that he should have been permitted to develop fully and fairly

5    all of the evidence that would tend to exonerate him." Id. (citing and discussing

6    United States v. Ethridge, 948 F.2d 1215 (11th Cir. 1991) (mail fraud conviction

7    reversed because court sustained objection to the defendants' closing argument

8    emphasizing he lacked the intent to defraud the victims); United States v. Foshee,

9    578 F.2d 629 (5th Cir. 1978) (defendants should have been permitted to offer

10   evidence to defeat the inference they intended to defraud the identified victims); and

11   United States v. Garvin, 565 F.2d 519 (8th Cir. 1977) (conviction reversed because

12   defendant not afforded opportunity to introduce truthful statements made to

13   insurance companies not named in the indictment).

14   Here, the defense sought to offer testimony from former NFE customers to

15   rebut the testimony of the four victim clients.  The government tailored its

16   presentation of the evidence to show what the four identified customers believed and

17   assumed when they entered into the exchange agreements with NFE.  However, the

18   critical issue in this case is not what the victims believed but rather what Mr.

19   Namvar intended.  Because the government's case relied on an established course of

20   dealing and the government presented no evidence to the contrary, the testimony of

21   former NFE customers was highly relevant in this case, and the defense was entitled

22   to present this evidence to rebut the uninformed assumptions and beliefs of the four

23   identified customers.

24   NFE's history of completing exchanges and Mr. Namvar's interactions with

25   other NFE customers is directly relevant to whether Mr. Namvar intended to deceive

26   the four customers the government chose to identify in the Indictment.  The

27   testimony of other NFE customers is highly probative of the nature of the alleged

28   scheme and ultimately Mr. Namvar's intent to defraud.  Fairness compels the Court

15

1   to vacate the judgment and provide Mr. Namvar with sufficient latitude to present

2   this evidence in defense of the charges in the Indictment.

3                     (d)      <u>The Jury Was Not Provided With The Defense Exhibits,</u>

4                             <u>And Was Incorrectly Told That They Had All Exhibits</u>

5                             <u>When They Specifically Asked For The Defense Exhibits.</u>

6        Mr. Namvar was further prejudiced in this case by the fact that the jury was

7   not provided with the defense exhibits for their deliberations.  During trial, the

8   defense introduced fourteen (14) exhibits.  Declaration of Amos A. Lowder, ¶ 2.

9   After trial, defense counsel and government counsel conferred with the court clerk,

10  and confirmed that all exhibits that were admitted during the trial were properly

11  organized and available for the jury.  <u>Id</u>.  During their deliberations, the jury sent a

12  note to the Court specifically asking for the defense exhibits.  The Court, under the

13  mistaken impression that all admitted exhibits had been provided to the jury,

14  advised the jury that all of the admitted trial exhibits were already in their

15  possession. Apparently, neither the Court nor the bailiff verified the presence of the

16  defense exhibits in the jury room.   In fact, as was discovered after the jury returned

17  its verdict, none of the defense exhibits were provided to the jury at any point during

18  their deliberations.  <u>Id</u>. at ¶¶ 3-4.

19       Mr. Namvar was absolutely entitled to have the defense exhibits present in the

20  jury room during deliberations.  The absence of the exhibits fundamentally impaired

21  a critical stage of the proceedings and fairness compels a new trial to cure this

22  defect.  <u>United States v. Collins</u>, 604 F.3d 481, 489 (7th Cir. 2010) ("a new trial is

23  required if there is a reasonable possibility that a party is prejudiced by the district

24  court's failure to provide certain exhibits to the jury").

25                    (e)      <u>The Prosecutor Improperly Testified During Closing</u>

26                            <u>Argument, Introducing Facts That Were Not Presented At</u>

27                            <u>Trial.</u>

28       The prosecutor, during rebuttal, improperly testified regarding two critical

16

1   issues in this case and the Court did not admonish the prosecutor or instruct the jury

2   to disregard the prosecutor's improper testimony.  The prosecutor's efforts to recast

3   the testimony of two key government witnesses, Paul Laska and Larry Russ,

4   adversely affected the fairness of the trial and prejudiced Mr. Namvar.

5        "The government may not vouch for the credibility of its witnesses, either by

6   putting its own prestige behind the witness, or by indicating that extrinsic

7   information not presented in court supports the witness' testimony." <u>Simtob</u>, 901

8   F.2d at 805 (internal citations omitted).  The court must consider "whether the

9   prosecution's actions 'so infected the trial with unfairness as to make the resulting

10   conviction a denial of due process.'" <u>Hein v. Sullivan</u>, 601 F.3d 897, 912 (9th Cir.

11   2010) (citing <u>Darden v. Wainwright</u>, 477 U.S. 168, 182, (1986)).  The factors the

12   court may consider include "whether the comment misstated the evidence, whether

13   the judge admonished the jury to disregard the comment, whether the comment was

14   invited by defense counsel in its summation, whether defense counsel had an

15   adequate opportunity to rebut the comment, the prominence of the comment in the

16   context of the entire trial and the weight of the evidence." <u>Id</u>. at 912-13 (citing

17   <u>Darden</u>, 477 U.S. at 182).

18        Over the course of two days, Mr. Laska testified, clearly and consistently, that

19   NFE employee Sasha Ettehadieh was his contact at NFE when he opened his first

20   exchange in 2005.  During both direct examination and cross-examination, Mr.

21   Laska testified that, prior to his 2005 exchange, Mr. Ettehadieh discussed the terms

22   of the contract with him and also answered his questions with regards to how his

23   exchanges proceeds would be held.  Included in this testimony was the critical

24   allegation that Mr. Ettehadieh told Mr. Laska that his money would be held safely in

25   a bank account during the entire exchange.  However, Mr. Laska's testimony on this

26   critical issue was a complete fabrication.  Uncontested evidence introduced at trial

27   indicated that Mr. Ettehadieh did not begin his employment at NFE until 2006.

28   Thus, the conversations and representations that Mr. Laska supposedly relied on

17

1  never took place.

2      The government was well aware of the fact that Mr. Laska's testimony was

3  inaccurate, but took no steps to correct the record while Mr. Laska was on the

4  witness stand.  Even after the Court excused Mr. Laska, the government could have

5  easily addressed the issue during the direct examination of Mr. Ettehadieh, but again

6  decided to allow Mr. Laska's blatant fabrications to rest uncontested.  It was not

7  until Mr. Laska's statements were called into question by the defense in closing

8  argument did the government make an attempt to address Mr. Laska's testimony.

9  Instead of acknowledging Mr. Laska's fictional account of the purported

10  conversations with Mr. Ettehadieh, the prosecutor improperly testified that Mr.

11  Laska must have been mistaken due to his advanced age.  Even more remarkably,

12  the prosecutor opined that the conversations Mr. Laska described likely occurred

13  with defendant Tabatabai, not Mr. Ettehadieh.

14      There was absolutely no basis for the prosecutor to state or imply that this

15  fictitious conversation took place, much less that Mr. Tabatabai was involved in

16  such a conversation.  The government made this grossly improper claim in its

17  rebuttal argument, when the defense had no opportunity to respond.  This

18  misconduct alone justifies a mistrial.[8]

19      Similarly, another government witness, Larry Russ, testified inconsistently

20  regarding his knowledge of NFE's business practices.  At trial, Mr. Russ testified

21  that prior to opening the exchange at issue, he had no idea that NFE regularly

22  transferred exchange funds to NCG.  However, during an interview with the FBI,

23  Mr. Russ informed the investigators that he was aware of Mr. Namvar's business

24  practices.  The defense called Special Agent Jeremy Tarwater to testify regarding

25  _____

26  [8] Defendants objected immediately when the prosecutor made this inappropriate
comment, and moved for a mistrial immediately following the government's

27  argument.

28

1  the substance of his conversations with Mr. Russ and he confirmed that Mr. Russ

2  did in fact tell the FBI that, prior to opening the exchange at issue in this case, he

3  had knowledge that Mr. Namvar used NFE funds in connection with his real estate

4  business.  Again, the government did not address the issue while either Mr. Russ or

5  Mr. Tarwater was on the witness stand.  Instead, the prosecutor simply testified

6  during his rebuttal argument that Mr. Russ told Mr. Namvar that he did not want his

7  money used in this manner.

8          Not only were the prosecutor's statements clear misrepresentations of the

9  evidence introduced at trial, but these statements were made at a point in the

10 proceedings when Mr. Namvar had no opportunity to challenge the accuracy of

11 these representations.  Again, a mistrial is warranted based on this conduct alone.

12 **IV.   <u>CONCLUSION.</u>**

13         The evidence introduced at trial was insufficient to support the jury's verdict.

14 The government failed to present evidence to satisfy each element of the charged

15 offense.  Furthermore, the case that the government presented to the jury was

16 fundamentally different than the case represented by the government to the Court in

17 order to garner favorable evidentiary rulings.  The government's departure from its

18 proffered theory of liability prejudiced Mr. Namvar's ability to adequately present

19 evidence in defense of the allegations presented at trial.

20         For the reasons set forth above, Mr. Namvar respectfully requests that this

21 Court enter a judgment of acquittal on all counts of the Indictment, or in the

22 alternative, order a new trial.

23

24

25

26

27

28

1    DATED: June 2, 2011                Respectfully submitted,

2                                       SCHEPER KIM & HARRIS LLP
3                                       MARC S. HARRIS
                                        AMOS A. LOWDER
4

5

6                                       By:    /S/  Marc S. Harris
7                                              Marc S. Harris
                                               Attorneys for Defendant Ezri Namvar
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT EZRI NAMVAR'S NOTICE OF MOTION AND MOTION FOR ACQUITTAL PURSUANT TO
RULE 29 AND MOTION FOR NEW TRIAL PURSUANT TO RULE 33