
**SCHEPER KIM & HARRIS LLP**
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
AMOS A. LOWDER (State Bar. No. 269362)
alowder@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA  90071-2025
Telephone: (213) 613-4655
Facsimile:  (213) 613-4656

**Attorneys for Defendant Ezri Namvar**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>      v.<br><br>EZRI NAMVAR,<br>      aka Ezri Namvar Maghadam, and<br>HAMID TABATABAI,<br>      aka Hamid Taba,<br><br>           Defendants. | CASE NO. CR 10-1055-PA<br><br>**DEFENDANT EZRI NAMVAR'S *EX PARTE* APPLICATION FOR PERMISSION TO ACCEPT EMPLOYMENT; DECLARATIONS OF MARC S. HARRIS AND ILANA NAMVAR IN SUPPORT THEREOF** |
|---|---|

1  Defendant Ezri Namvar, by and through his attorneys of record, hereby
2  applies *ex parte* for an order allowing him to accept an employment offer consistent
3  with his release conditions.  On June 22, 2011, government counsel was contacted
4  regarding this *ex parte* application.  The government stated its intention to oppose
5  the application on the purported ground that Mr. Namvar is "an economic danger to
6  the community." (Harris Decl., ¶ 9).
7      This application is based upon the attached Memorandum of Points and
8  Authorities, the attached Declarations of Marc S. Harris and Ilana Namvar, the files
9  and records in this case, and upon such further information as may be provided to
10 the Court regarding this application.

12 DATED: July 11, 2011        SCHEPER KIM & HARRIS LLP
                               MARC S. HARRIS
13                             AMOS A. LOWDER

16                             By:   /S/  Marc S. Harris
                                     _____
17                                   Marc S. Harris
                                     Attorneys for Defendant Ezri Namvar

## MEMORANDUM OF POINTS AND AUTHORITIES

Since his indictment in this case, defendant Ezri Namvar has been thwarted in his ability to seek gainful employment, notwithstanding the fact that one of the conditions of his release is that he actively seek employment. Although Mr. Namvar's conditions of release include no explicit restriction on the type of employment Mr. Namvar may pursue, Pretrial Services ("PTS") has taken an extremely restrictive position as to what type of work they will allow. Recently, PTS rejected Mr. Namvar's request to accept a job offer as a consultant/loan broker and business development officer for a lending and investment company. According to Mr. Namvar's PTS Officer, when he attempted to get guidance from the Court as to the parameters of Mr. Namvar's employment restrictions, he was advised by the Court's clerk that the Court was ordering Mr. Namvar not to work at all during his period of home incarceration.

As Mr. Namvar has advised PTS, he desperately needs and wants to work. He has a family to support, legal fees to pay and creditors to repay. He has sought and identified a job that will allow him the opportunity to make a significant amount of money and begin the process of repaying all of is creditors, including the alleged victims in the instant case.

The job Mr. Namvar seeks permission to accept would pose no risk of any financial (or other) crime, as he will not handle any funds and will be closely supervised by the President of the company. Further, pursuant to a stipulation Mr. Namvar reached with the bankruptcy trustee, the trustee will monitor Mr. Namvar's employment activity and all payments made to him, and will take its agreed upon share of any earnings. Nor will this employment increase any risk of flight. In short, there is no legitimate law enforcement or administrative purpose to deny Mr. Namvar this opportunity. Accordingly, defendant respectfully requests the Court's permission to accept the job outlined in the employment offered attached to the Declaration of Marc S. Harris as Exhibit D.

**Factual Background**

On September 27, 2010, the court set defendant Ezri Namvar's conditions of release. (Harris Decl., Exhibit A). As one of the conditions of release, Mr. Namvar was ordered to actively seek employment and to have any employment approved by PTS. In October 2010, defendant's PTS Officer (Karin Storm) advised Mr. Namvar's counsel that PTS would not approve any employment in the "real estate" industry. In a follow-up call with Ms. Storm and a supervisor in the PTS office, Michael Reis, PTS expressed concern over Mr. Namvar working in any capacity that allowed him access to client funds, whether or not the employment involved real estate. They also expressed concern that Mr. Namvar not be self-employed, but rather that he try to find work for a "real company." Without explanation, the PTS officers claimed that the suggested work activity was "too similar" to the charged offense.[1]

In an October 20, 2010, email to Ms. Storm and her supervisors, counsel for defendant described the type of work Mr. Namvar wanted to perform, and asked for permission to perform it. (Harris Decl., ¶ 3). The email explained that Mr. Namvar had an opportunity to earn money as a loan broker, whereby he would put borrowers and lenders together in connection with alternative loan scenarios. (Harris Decl., Exhibit B). As an example, the email described a project in Orange County where a lender had stopped funding a shopping center project due to the downturn in the real estate market and the diminution in the property's value. The developers, who had a $42 million construction loan, needed to arrange for new financing in order to be able to complete the project. Mr. Namvar's role was to be to re-package the loan transaction to replace the financing and allow the project to continue, which would

---

[1] The proposed work was nothing like the charged offense, which involved alleged mishandling of funds deposited with a 1031 exchange company.

have earned him a commission of approximately $100,000.  The email to PTS made clear that the opportunities Mr. Namvar wished to pursue did not include the handling of any third-party funds, and that any commission payments he received would be accounted for and submitted to the Bankruptcy Trustee.

Pretrial Services refused to allow Mr. Namvar to engage in the loan broker/consulting work described in the October 20, 2010 email, although no explanation was given beyond the concerns raised by PTS prior to the email.  (Harris Decl. ¶ 5).[2]

On May 19, 2011, Mr. Namvar was convicted following a jury trial.  After the verdict, the government moved for immediate remand, claiming that Mr. Namvar was a flight risk.  During the argument on the motion, the Court pointed out to government counsel that the government's position regarding detention was not consistent with its claimed concern for the people who were owed money by Mr. Namvar.  (Harris Decl, ¶ 6).  The Court denied the government's motion, but modified Mr. Namvar's release conditions to require home incarceration.  The modified release conditions maintained the requirement that Mr. Namvar "[m]aintain or actively seek employment."  (Harris Decl., Exhibit C).

On June 12, 2011, Mr. Namvar received an offer of employment from Palisades Capital, LLC ("Palisades Capital").  The proposed employment involves work as a Business Development and Loan Officer.  The proposed work involves identifying and negotiating investment and loan transactions for Palisades Capital, where Palisades Capital would either be the lender or an investor, or would broker the loan to another lender.  (Harris Decl., Exhibit D).  Mr. Namvar would not be

---

[2] Defendant strongly suspects that the shifting position articulated by PTS with respect to Mr. Namvar's employment is based, at least in part, on the government's continued opposition to Mr. Namvar pursuing the employment opportunities suggested.

Case 2:10-cr-01055-PA   Document 153   Filed 07/11/11   Page 6 of 7   Page ID #:2216

investing any funds, and would not be handling any funds belonging to Palisades Capital or any third party. All of his work will be supervised by the President of Palisades Capital, and all of Mr. Namvar's earnings will be reported to the Bankruptcy Trustee. (Harris Decl. ¶ 7). In fact, Mr. Namvar has agreed to have his paychecks sent directly to the Bankruptcy Trustee. (Harris Decl. ¶ 7).

On June 17, 2010, Mr. Namvar was advised by his current PTS officer, Samuel Hernandez, that PTS would not approve the employment with Palisades Capital. Mr. Hernandez suggested that Mr. Namvar make his request directly to the Court. In a conversation with counsel on June 22, Mr. Hernandez explained that he had sought guidance from the Court regarding the parameters to be applied in evaluating work opportunities, and was advised by the Court's clerk that the Court did not want Mr. Namvar working at all. (Harris Decl. ¶ 8).

**Argument**

Mr. Namvar has repeatedly stressed to PTS his desire and need to work. Not only does Mr. Namvar have a family to support and legal fees to pay, but he wants very much to earn money to begin paying back his creditors, including those involved in this case. (See attached Declaration of Ilana Namvar). The proposed employment opportunity would allow Mr. Namvar to work in a field where he has considerable expertise, and would allow him to assist Palisades Capital expand its business. The work is entirely legitimate, and poses no threat to anyone. As a further condition of his employment, Mr. Namvar would be willing to affirmatively notify any clients or potential clients of his current situation, including the fact that a jury has returned a guilty verdict in a criminal mail fraud case.

The government has indicated its intention to oppose this application on the purported ground that Mr. Namvar is an "economic danger to the community." Clearly, the government has extremely negative feelings about Mr. Namvar, as evidenced by the positions taken by the prosecutors throughout this case. However, vindictiveness or anger is not a proper basis to deny Mr. Namvar the opportunity to

6
DEFENDANT EZRI NAMVAR'S *EX PARTE* APPLICATION FOR PERMISSION TO ACCEPT EMPLOYMENT

1  work.  There is absolutely no basis to conclude that "the community" will be
2  jeopardized by allowing Mr. Namvar to work for Palisades Capital, or any other
3  employer in the field.  Mr. Namvar will not have access to any client funds, or the
4  funds of any third parties.  He will be closely supervised by his employer, who is
5  familiar with Mr. Namvar's conviction and his legal status.  All of Mr. Namvar's
6  earnings, along with the details of all transactions, will be sent directly by the
7  employer to the Bankruptcy Trustee, with Mr. Namvar's share of the earnings
8  distributed to him by the Trustee.  Thus, there is no legitimate argument that Mr.
9  Namvar's employment would result in danger to the community.  Nor is there any
10 plausible argument that Mr. Namvar would be an increased flight risk as a result of
11 the employment.
12       Mr. Namvar respectfully requests that the Court authorize Mr. Namvar to
13 accept the job offer attached hereto, and to begin working at Palisades Capital in
14 accordance with the offer of employment.

DATED: July 11, 2011                Respectfully submitted,

                                    SCHEPER KIM & HARRIS LLP
                                    MARC S. HARRIS
                                    AMOS A. LOWDER


                                    By:   /S/ Marc S. Harris
                                          Marc S. Harris
                                          Attorneys for Defendant Ezri Namvar