ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
BRIAN E. KLEIN (Cal. State Bar No.: 258486)
MONICA D. MANGE (Cal. State Bar No.: 234950)
Assistant United States Attorneys
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6920/6529
    Facsimile: (213) 894-6269
    E-mail: brian.klein@usdoj.gov
        monica.mange@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 10-1055-PA |
| Plaintiff, | <u>GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORTS OF DEFENDANTS EZRI NAMVAR AND HAMID TABATABAI</u> |
| v. | |
| EZRI NAMVAR,<br>  aka "Ezri Namvar Moghadam,"<br>and HAMID TABATABAI,<br>  aka "Hamid Taba," | Sentencing Date:<br>    September 26, 2011<br><br>Sentencing Time:<br>    8:30 a.m. |
| Defendants. | |

Plaintiff United States of America, by and through its attorney of record, the United States Attorney for the Central District of California, hereby respectfully submits its objections to defendant Ezri Namvar's and Hamid Tabatabai's respective Presentence Reports.

This filing is based on the attached memorandum of points and authorities, the evidence presented at trial, the files and

records of this case, and such further evidence and argument as the Court permits at any hearing on this matter.

DATED: July 28, 2011              Respectfully submitted,

                                        ANDRÉ BIROTTE JR.
                                      United States Attorney

                                      ROBERT E. DUGDALE
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                                /s/
                                      BRIAN E. KLEIN
                                      MONICA D. MANGE
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      United States of America

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants Ezri Namvar and Hamid Tabatabai await sentencing after a jury convicted them each of four counts of wire fraud, in violation of 18 U.S.C. § 1343.  In connection with their sentencings scheduled for September 26, 2011, the United States Probation Office prepared Presentence Reports ("PSRs") for each of them.  Defendant Tabatabai's was disclosed on July 14, 2011, and defendant Namvar's was disclosed on July 15, 2011.

The following are the government's objections to the PSRs. The government will file detailed sentencing positions for each defendant before their sentencings, in which the government will state its recommended sentences pursuant to the 18 U.S.C. § 3553(a) factors.

### II.   THE FACTUAL FINDINGS OF DEFENDANTS' PRESENTENCE REPORTS

The government submits the following objections to the factual findings of defendants' PSRs.  Each PSR's discussion of "The Offense Conduct" is the same and thus any objections to those factual findings are combined.  (Compare defendant Tabatabai's PSR ¶¶ 6-34 to defendant Namvar's PSR ¶¶ 4-32.)

Tabatabai ¶ 7; Namvar ¶ 5: The second sentence should say "sole," not "sold."  (GX 72.)[1]

Tabatabai ¶ 8; Namvar ¶ 6: Defendant Tabatabai was paid a salary and bonus each year from 2004 through 2007.  (GX 60; 5/12/11 RT 90:5-7, 15-19)  In 2008, he received a salary but no bonus.  (Id.)

---

[1] "GX" refers to government trial exhibits.  "RT" refers to the Reporter's Transcript of Proceedings, preceded by the date and followed by the applicable page reference.  "CR" refers to the Criminal Docket

1        <u>Tabatabai ¶ 12; Namvar ¶ 10</u>: Client exchange proceeds were to be held in safekeeping in an NFE bank or savings account the entire time (not transferred to another unaffiliated company or used to pay expenses unrelated to them).  (<u>See, e.g.,</u> GX 101, 301, 401, 501.)

6        <u>Tabatabai ¶ 13; Namvar ¶ 11</u>: Defendant Namvar agreed to the terms discussed in sentence two among other terms.  (GX 41, 45.)

8        <u>Tabatabai ¶ 14; Namvar ¶ 12</u>: Defendant Tabatabai also recruited clients to Namco Financial Exchange Corp. ("NFE"). (5/16/11 RT 86:16-20, 25-87:4.)

11       <u>Tabatabai ¶ 15; Namvar ¶ 13</u>: The fraud scheme's only victims are the four victims identified in the indictment.  (CR 122.)

13       <u>Tabatabai ¶ 16; Namvar ¶ 14</u>: The four victims' exchange proceeds were to be held in an NFE bank or savings account the entire time (not transferred to another unaffiliated company or used to pay expenses unrelated to them).  (GX 101, 301, 401, 501; 5/4/11 RT 245:6-10, 248:16-20, 253:22-254:2; 5/4/11 (afternoon);[2] RT 22:24-23:5, 13-16, 21-25; 5/6/11 RT 196:9-15, 198: 2-9; 5/10/11 RT 39:24-40:10, 63:8-10; 5/11/11; RT 153:3-13, 175:23-176:10, 206:22-207:2; 5/12/11 RT 18:2-12.)

21       <u>Tabatabai ¶ 17; Namvar ¶ 15</u>: Defendant Namvar recruited clients in general as stated in this paragraph.  (<u>See, e.g.</u>, 5/16/11 RT 87:1-2.)  Defendant Tabatabai also recruited clients. (5/16/11 RT 87:3-4.)

25       <u>Tabatabai ¶ 18; Namvar ¶ 16</u>: The secure account or accounts were NFE account or accounts.  (<u>See</u> Objection to Tabatabai ¶ 16 and Namvar ¶ 14 above.)

---

[2]  A portion of the afternoon proceedings on May 4, 2011 was reported by Mark Schweitzer.  Accordingly, this citation and others to that afternoon come from the second transcript of that date.

  <u>Tabatabai ¶ 19; Namvar ¶ 17</u>: Defendant Tabatabai was also the person in charge of coordinating the unauthorized transfers because NFE's and Namco Capital Group Inc.'s ("NCG's") bookkeepers only moved money at his direction. (5/6/11 RT 168:12-19, 187:16-18; 5/11/11 RT 21:24-22:3, 70:18-20; 5/17/11 RT 207:4-208:8.) Defendant Tabatabai was the only person to check both NFE's and NCG's online bank accounts, no other employee had such access, and he did so regularly. (GX 32-34, 36-37; 5/12/11 RT 39:15-17, 40:3-4.)

  <u>Tabatabai ¶ 21; Namvar ¶ 19</u>: Defendant Tabatabai was aware of the verification letters. (5/17/11 RT 191:5-8.) NFE's bookkeeper sought and received defendant Tabatabai's or another employee's authorization before sending them out. (5/11/11 RT 55:17-25; 5/16/11 RT 96:3-8.)

  <u>Tabatabai ¶ 28; Namvar ¶ 26</u>: Larry Russ, not Sunnylane, had used NFE twice before, in 2005 and 2007. (5/11/11 RT 132:20-22, 135:1-139:10.)

  <u>Tabatabai ¶ 30; Namvar ¶ 28</u>: Trial testimony established that defendant Namvar admitted that he had taken the money, knew it was wrong, and he was sorry. (5/11/11 RT 170:9-171:5; 5/13/11 RT 91:12-91:11.)

  <u>Tabatabai ¶ 32; Namvar ¶ 30</u>: Paul Laska testified at trial that Namvar stated there had been a "mix up" with the accounts, that someone had "goofed" and sent Laska's money elsewhere. (5/4/11 RT 266:17-267:3.)

  <u>Tabatabai ¶ 35; Namvar ¶¶ 33-37</u>: The government's calculation of the victims' actual loss amounts are as follows: (1) V. Trust lost $742,955; (2) K. Trust lost $17,491,919; (3)

Sunnylane lost $1,972,003; and (4) L. Trust lost $723,771. (See GX 1-6, 8-14.) These actual, out-of-pocket loss numbers do not include interest purportedly earned or the exchange fee paid.

Tabatabai ¶ 45: Defendant Tabatabai played a key role in moving the victims' exchange proceeds and making unauthorized transactions with those exchange proceeds. For example, as noted above, NFE's and NCG's bookkeepers only moved money at his direction. (5/6/11 RT 168:12-19, 187:16-18; 5/11/11 RT 21:24-22:3, 70:18-20; 5/17/11 RT 207:4-208:8.) The government's objection to this paragraph is discussed further in the section below.

Tabatabai ¶ 100; Namvar ¶ 117: The restitution amounts should be modified to reflect the loss amounts discussed above.

**III. DEFENDANT TABATABAI'S PRESENTENCE REPORT SENTENCING GUIDELINES CALCULATIONS**

Defendant Tababatai's PSR calculated his total offense level as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [USSG § 2B1.1(a)(1)] |
| Loss of more than $20 million: | +22 | [USSG § 2B1.1(b)(1)(K)] |
| Minimal Role | -4 | [USSG 3B1.2(a)] |
| **Total Offense Level:** | **25** | |

(PSR ¶¶ 38-51.) The PSR also calculated a criminal history category of I, due to zero criminal history points. (Id. ¶¶ 53-56.) Based on a total offense level of 25 and a criminal history category of I, the PSR calculated the following: 1) a Sentencing Guidelines range of 57 to 71 months imprisonment; 2) a term of supervised release of two to three years; 3) a fine between $10,000 and $100,000; and 4) a $400 mandatory special assessment.

4

(Id. ¶¶ 82, 85, 93, 95.)

The government agrees with the PSR's Sentencing Guidelines calculations, with one exception. Defendant Tabatabai does not qualify for a "minimal role" downward adjustment (as the PSR contends in Paragraphs 44-45), or even a "minor role" adjustment, pursuant to USSG 3B1.2. Section 3B1.2 provides:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

The commentary states that the Section "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." Id., app. n. 3(A). A "minimal participant" is defined as follows:

> Minimal Participant.–Subsection (a) applies to a defendant . . . who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently.

Id., app. n. 4. The PSR contends that defendant Tabatbai qualifies for such a role reduction because his "role is seen as minimal in comparison to [defendant] Namvar." (PSR ¶ 45.) The PSR goes on to state in support of its position that defendant

5

Tabatabai: is "substantially less culpable"; was defendant Namvar's employee; "there is no indication that he was responsible for moving client money, or making unauthorized transactions with client money; and defendant Namvar "authorized most of the transfers," with the money used for his benefit. (Id.)  The PSR does note that defendant Tabatabai signed all the 1031 exchange agreements and had online access to bank accounts. (Id.)

The facts of this case do not support a four-level decrease in defendant Tabatabai's total offense level for minimal participation, or even minor participation, pursuant to Section 3B1.2(a).  To qualify for a minimal or minor role reduction under Section 3B1.2, a defendant must be significantly less culpable than co-participants.  See United States v. Cantrell, 433 F.3d 1269, 1283 (9th Cir. 2006); USSG § 3B1.2, app. n. 3(A).

Although the government concedes that defendant Tabatabai was not the fraud scheme's mastermind (the evidence shows that it was defendant Namvar was its organizer and leader), defendant Tabatabai had a detailed understanding and thorough knowledge of the scheme; and he played a significant role in it, not a minimal or even minor one.  The evidence at trial established these facts.  For example, defendant Tabatabai was the only person who checked the bank accounts of both NFE and NCG online on an almost daily basis to see the different account balances and to see how much money was moving in and out of NFE's and NCG's bank accounts.  (GX 32-34, 36; 5/12/11 RT 39:15-17, 40:3-4.)  And NFE's and NCG's bookkeepers only moved money out of those companies, respectively, at defendant Tabatabai's direction.

(5/6/11 RT 168:12-19, 187:16-18; 5/11/11 RT 21:24-22:3, 70:18-20.)  Further, when NFE needed the money that had been transferred to NCG, NFE's bookkeeper would make a request to defendant Tabatabai who would, in turn, instruct NCG's bookkeeper to transfer money from NCG back to NFE.  (5/11/11 RT 99:22-100:22, 101:6-21.)  Moreover, defendant Tabatabai knew that the exchange agreements with the four victims were deceptive because, at the time he signed them, he knew that their money would not stay in an NFE account but would be, for example, transferred over to NCG to use for things unrelated to the victims.  (5/17/11 RT 85:22-86:3, 86:5-13, 87:11-15.)  In addition, the importance of defendant Tabatabai entering into each of the exchange agreements at issue, whose terms and provisions he was familiar with, on behalf of NFE should not be discounted.  (GX 101, 301, 401, 501; (5/17/11 RT 202:16-19, 203:10-13.)  After all, this was integral to putting the fraud scheme in motion.  For these reasons, among others,[3] there can be no doubt that defendant Tabatabai was a substantial participant in the scheme to defraud the four victims, and therefore the Court should reject any role reduction pursuant to USSG § 3B1.2.

Lastly, the PSR noted that the government intends to seek an enhancement for obstruction of justice arising from defendant Tabatabai's trial testimony.  (PSR ¶ 46.)  At this time, the government is not seeking such an enhancement, but the government reserves its right to do so.  The government currently intends to

---

[3] For additional discussion regarding defendant Tabatabai's significant role in the fraud scheme, please refer to pages 26-36 of the Government's Consolidated Opposition to Defendants Ezri Namvar's and Hamid Tabatabai's Rule 29 and 33 Motions.  (CR 175.)

7

address defendant Tabatabai's trial testimony in its sentencing position discussion of the Section 3553(a) factors.

## IV. DEFENDANT NAMVAR'S PRESENTENCE REPORT SENTENCING GUIDELINES CALCULATIONS

Defendant Namvar's PSR calculated his total offense level as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [USSG § 2B1.1(a)(1)] |
| Loss of more than $20 million: | +22 | [USSG § 2B1.1(b)(1)(K)] |
| Organizer/Leader | +4 | [USSG 3B1.1(a)] |
| **Total Offense Level:** | **33** | |

(PSR ¶¶ 41-56.) The PSR also calculated a criminal history category of I, due to zero criminal history points. (Id. ¶¶ 58-60.) Based on a total offense level of 33 and a criminal history category of I, the PSR calculated the following: 1) a Sentencing Guidelines range of 135 to 168 months imprisonment; 2) a term of supervised release of two to three years; 3) a fine between $17,000 and $175,000; and 4) a $400 mandatory special assessment. (Id. ¶¶ 99, 102, 110, 112.)

The government agrees with the PSR's Sentencing Guidelines calculations.

***

The government reserves the right to challenge any of the PSRs' or anticipated Amended PSRs' factual findings and Sentencing Guidelines calculations at a later date.