LAW OFFICES OF JAMES W. SPERTUS
JAMES W. SPERTUS (SBN 159825)
1990 South Bundy Dr., Suite 705
Los Angeles, California 90025
Telephone: (310) 826-4700
Facsimile: (310) 826-4711
jim@spertuslaw.com

Attorneys for Defendant
Hamid Tabatabai

SCHEPER KIM & HARRIS LLP
MARC S. HARRIS (State Bar No. 136647)
mharris@scheperkim.com
AMOS A. LOWDER (State Bar No. 269362)
alowder@scheperkim.com
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025
Telephone: (213) 613-4655
Facsimile: (213) 613-4656

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>EZRI NAMVAR, and HAMID TABATABAI<br><br>　　　　Defendants. | Case No. CR 10-1055 PA<br><br>**EX PARTE APPLICATION (1) FOR AN ORDER STRIKING LATE-FILED GOVERNMENT BRIEFING OR ALTERNATIVELY ALLOWING DEFFENDANTS TO FILE A RESPONSE AND (2) FOR AN ORDER SETTING AN EVIDENTIARY HEARING AND A CONTINUANCE OF THE SENTENCING; DECLARATION OF JAMES W. SPERTUS** |

　　　　Defendants Hamid Tabatabai and Ezri Namvar, by and through their respective counsel, hereby apply ex parte for (1) an order striking the government's late-filed sentencing brief, filed on October 5, 2011 in violation of the Court's order requiring briefs to be filed on September 26, 2011 or alternatively allowing

Defendants to file a written response; and (2) an order setting an evidentiary hearing on the government's attempt to prove the losses were reasonably foreseeable (in order to enhance Defendants' sentence), including an opportunity to test the veracity of the Trustees' Report upon which the government relies. Such a hearing is necessary to avoid a violation of Defendants' due process rights as the Trustees' Report's adverse assertions and allegations are false and inaccurate and may not in any event be relied upon as evidence to establish that the losses were reasonably foreseeable, or for any other purpose. A two week continuance of the sentencing should be sufficient to enable the parties to prepare for and participate in an evidentiary hearing, with the Trustees as the sole witnesses, and to prepare responses to the government's late-filed briefing.

If the Court is going to consider the government's late-filed briefing, the interests of justice require a continuance to enable the defendants to file responses. There are numerous facial inconsistencies between the government's trial position and its sentencing position, and the changed positions require responses from the defendants. If the Court is going to consider the government's briefing, then the defense should be afforded a meaningful opportunity to respond.

Throughout the trial of this case, the government repeatedly emphasized to the Court that the scheme charged in this case was very narrow and involved only four victims. Based on those representations, the Court repeatedly sustained the relevancy objections to evidence proffered by the defense. In stark contrast to the government's position at trial, the government now argues that "the crime for which defendants were convicted was a long-running scheme . . . ." The government also has the temerity to claim that the absence of evidence it successfully excluded from the trial now supports its sentencing position. For example, after preventing the defense from introducing evidence that other NFE customers knew that exchange funds were used by NCG, the government argues that this fact was hidden from customers. Likewise, after preventing the defense from introducing evidence that

all proceeds from real estate sales in the Fall of 2008 had been formally assigned to NFE, the government states that the pendency of these sales is irrelevant because "NCG had no obligation upon the sale of any asset to transfer the sale proceeds to NFE." (Government's brief, p. 4). Essentially, the government now wants to have the trial that it prevented in May, recognizing that it cannot sustain its burden of proving reasonably foreseeable harm without delving into the issues defendants sought to present.

Separately, the government justifies its loss analysis with citations to the February 26, 2010 "First Financial Report of the Chapter 11 Trustees," in the involuntary bankruptcies of *In re Namvar* and *In re Namco Capital Group, Inc*. (the Trustees' Report). In fact, other than some December 2007 news articles which the government absurdly contends gave adequate notice of the real estate and financial markets crash of 2008, the only evidence the government puts forward to meet its burden of proving that the loss was reasonably foreseeable to the defendants is the Trustees' Report.

First, it should be noted that the *facts* in the Trustees' Report corroborate the information presented in Mr. Namvar's sentencing memorandum regarding the history and operation of Namco Capital Group ("NCG") and Namco Financial Exchange ("NFE"). These facts include the wholly legitimate and successful operation of Mr. Namvar's companies over a period of many years, including the completion of more than 1,600 exchanges between 1999 through 2008, totaling nearly $2 billion, $1,915,485,280. Trustees' Report p. 9. The Report also details the facts regarding Mr. Namvar's business success over the years, and the diversification from hard money lending into real estate equity investments beginning in 1997. The Report begrudgingly concedes the "considerable success" he experienced in his diversification to real estate, which it attributes to "being in the right place at the right time." *Id.* p. 11. The Report also includes facts regarding the expansion of the real estate investments, in size and numbers, from 2002 to 2006, as

real estate values continued to grow.

The facts show that in 2001 Namco had investments worth approximately $60 million and total creditor/investors of $65 million, a leverage of approximately 9.2%, and in 2008 it had investments worth approximately $600 million, and creditor/investors of approximately $640 million to $650 million, a leverage of 6.7% to 8.3%. *Id.* pp. 55-56. (These figures are based on the Trustees' evaluations of the properties, which Mr. Namvar vigorously disputes.)

However, the Trustees' Report also includes a series of false and unsupported accusations and misinterpretations of the relevant financial data. For example, the Trustees' Report contrasts the $5 million in liabilities in 2001 with the $40 to $50 million between 2006 to 2008 to make it appear as if the company was hopelessly burdened with debt, and opines that Mr. Namvar was experiencing a "perilous financial slide," and "descending into a monthly spiral" toward bankruptcy. *Id.* pp. 6-7. This conclusion ignores the Report's own data that the value of the investment portfolio grew 10-fold during the same period, more than justifying the increasing debt. Rather than seek to understand the facts, the government simply parrots the negative conclusions of the Report in its sentencing brief.

Likewise, the government adopts the Trustees' Report's unfair and unsupported claim that Mr. Namvar should have foreseen the real estate and financial crash of 2008, which the Trustees' Report concedes was "the largest financial downtown in recent memory." *Id.*, pp. 10. While conceding the magnitude of the crisis, the Trustees' Report faults Mr. Namvar for not foreseeing what no one foresaw, and even calls him "delusional" for believing, as most everyone else did, that real estate values would continue to increase. *Id.* p. 13. In sum, the Trustees' Report ignores or mischaracterizes the facts, and attempts to cast Mr. Namvar in the worst possible light.

The Trustees' Report is riddled with other inaccuracies and misleading statements. For example, the Report falsely states that Mr. Namvar failed to

perform adequate due diligence before purchasing properties (Report p. 2), and that Mr. Namvar "refused many opportunities to sell assets at crucial periods." Report, p. 15. As the Report acknowledges, had the sale of the assets been accomplished, they "would have generated a potential profit of $100,000,000," and there would have been profits instead of losses. Report, p. 15, n. 9.  This certainly undermines the Report's claim that the purchases were not well thought out or investigated. Moreover, the Report ignores the obvious fact that the reason the sale of these assets was not accomplished, however, was not Mr. Namvar's "recalcitrance," but the strategy of the potential purchasers to delay or back out of the sales, as word spread that Mr. Namvar was experiencing a liquidity problem.[1]

       Defendants strenuously objects to the government's reliance on the characterizations in the Trustees' Report, as they are false and untrue. They evidence either a deliberate attempt to portray Mr. Namvar unfairly in a false light or a misapprehension of the operational change from hard money lending to real estate equity investments.  Defendants request that they be stricken from the government's memorandum and given no consideration by the Court even if the Court does not grant the request to strike the memorandum itself.

       Defendants also object to all of the characterizations and purported opinions found throughout the Trustees' Report, which should be given no consideration and request an evidentiary hearing. Such a hearing is necessary to avoid a violation of Defendants' due process rights as the Trustees' Report's adverse assertions and

//
//
//
//

---

[1] This strategy proved effective for the purchasers, as they were able to acquire these extremely valuable properties at fire sale prices, both before and after the bankruptcy.

1 allegations are false and inaccurate and may not in any event be relied of an
2 evidence to establish the losses were reasonably foreseeable or any other purpose.

Dated: October 7, 2011		LAW OFFICES OF JAMES W. SPERTUS


                                               By:		/S_____
					James W. Spertus
					Attorneys for Hamid Tabatabai


Dated: October 7, 2011		SCHEPER KIM & HARRIS LLP


                                               By:		/S_____
					Marc Harris
					Attorneys for Ezri Namvar

# **DECLARATION OF JAMES W. SPERTUS**

I, James W. Spertus, hereby state and declare as follows:

1. I am an attorney duly admitted to practice in the State of California and the Central District of California, and am attorney of record for Hamid Tabatabai. I have personal knowledge of the facts set forth herein and, if called as a witness, I could and would competently testify thereto.

2. Minutes after the government filed its briefing on October 5, 2011, I sent AUSA Brian Klein an email requesting the government's position on this request to strike the government's brief or continue the sentencing. On October 6, 2011, Mr. Klein replied as follows "The government opposes a continuance, and to my knowledge, the government did not violate any court order re: a sentencing briefing schedule. I only recall the court setting a 9/26/11 date for filing initial sentencing positions."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 7, 2011, at Los Angeles, California.

/S_____
James W. Spertus

DECLARATION OF JAMES W. SPERTUS IN SUPPORT OF EX PARTE APPLICATION